## STATE OF CALIFORNIA *v.* DESERET WATER, OIL & IRRIGATION COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF CALI-
FORNIA.

No. 269.  Argued January 29, 1917.—Decided March 26, 1917.

When the decision of the state court in the application of state laws
to real property is controlled by a construction of federal statutes
concerning the title, which were relied on by the party complaining,
this court has jurisdiction to review the judgment.

When a forest reservation is made to include a school section previously
surveyed, the State may waive its right to the section and select
other lands in lieu, under §§ 2275, 2276, Rev. Stats., as amended by
the Act of March 3, 1891, c. 384, 26 Stat. 796.

This court will not readily disturb a construction of a land law by the
Land Department which, though differing from an earlier one, has
been adopted on full consideration and long consistently adhered
to by the Department, and upon the faith of which large acreages
have been acquired and large expenditures have been made.

167 California, 147, reversed.

THE case is stated in the opinion.

*Mr. John T. Nourse,* Deputy Attorney General of the
State of California, with whom *Mr. U. S. Webb,* Attorney
General of the State of California, was on the briefs, for
plaintiff in error.

*Mr. Charles F. Consaul,* with whom *Mr. A. H. Ricketts*
and *Mr. W. H. Metson* were on the briefs, for defendant
in error.

*Mr. Charles D. Mahaffie,* Solicitor for the Department
of the Interior, *Mr. C. Edward Wright* and *Mr. Oscar W.
Lange,* by leave of court, filed a brief on behalf of the
United States as *amici curiæ.*

MR. JUSTICE DAY delivered the opinion of the court.

The Deseret Water, Oil & Irrigation Company brought a proceeding in condemnation in the Superior Court of Mono County, California, against the State of California, to appropriate by right of eminent domain certain lands in that State, for the purpose of preserving and maintaining water rights, equipping and operating canals, etc., to be used in supplying water and power to mines, farming neighborhoods, cities, and towns and villages, and to corporations and individuals, draining, reclaiming and irrigating lands, equipping, operating and maintaining ditches, reservoirs, etc., and for the operation and maintenance of pumps and pumping plants, electrical lighting and power plants, and electric and power lines.

The right to make such appropriation was sustained in the Superior Court, but upon appeal this judgment was reversed by the District Court of Appeal for the Third Appellate District. Thereupon, upon motion to the Supreme Court of California, the cause was transferred to that court for hearing and decision, and, upon consideration, the judgment of the Superior Court was affirmed. 167 California, 147. The Supreme Court held that the lands belonged to the State, and that by certain statutes of the State it had been provided that, notwithstanding the ownership of the State, the lands might be appropriated to a public use such as the Water Company was lawfully proposing to make of them, and that as to such matters the State had consented to be sued in the same manner as any private proprietor might be. A writ of error brings the case to this court.

The land in question is a sixteenth section, passing to the State by virtue of the federal grant for school purposes. Act of 1853, 10 Stat. 244; Act of 1866, 14 Stat. 218. Afterward, a national reservation, known as the Mono Forest Reserve, was established by proclamation of the President.

This reservation included this section 16 within its boundaries.

It was shown at the trial that the lands in question were withdrawn from sale by the State by an act of the legislature, and it was contended they could only be used as bases for lieu selections. The surveyor-general of the State offered the lands as bases for such selections, except forty acres, for which the State had sold an indemnity certificate entitling the purchaser to surrender that land, and apply for unappropriated public land in lieu thereof. All the remainder had been offered for lieu selections which are pending in the General Land Office.

The Supreme Court of California held that the title to the lands was completely vested in the State, and subject to condemnation at the instance of the Water Company.

A motion to dismiss for want of jurisdiction has been submitted. As we shall have occasion to see in the further discussion of the case, its disposition depended upon the construction of statutes of the United States, and the opinion of the state court shows that these statutes were considered and federal rights asserted under them denied. Nor can we agree that there was a local ground of decision broad enough to sustain the judgment of the state court independently of the construction and effect given to the federal statute. The controlling effect of the federal statutes is conceded in the opinion of the state court, and must necessarily follow in view of the nature of the rights dealt with. In this situation this court has jurisdiction. *Miedreich* v. *Lauenstein,* 232 U. S. 236, 242; *North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, 257; *Rogers* v. *Hennepin County,* 240 U. S. 184, 188.

The federal statutes involved are §§ 2275 and 2276 of the Revised Statutes of the United States, as amended in 1891, 26 Stat. 796, 797. They are found in the margin.[1]

----

[1] "'Sec. 2275. Where settlements with a view to pre-emption or homestead have been, or shall hereafter be made, before the survey of

As we have already stated, the State has elected to surrender this section 16 to the United States, asking compensation in other lands for the same under the provisions contained in the sections of the federal statutes just referred to. It is the contention of the State that because of such

the lands in the field, which are found to have been made on sections sixteen or thirty-six, those sections shall be subject to the claims of such settlers; and if such sections, or either of them, have been or shall be granted, reserved, or pledged for the use of schools or colleges in the State or Territory in which they lie, other lands of equal acreage are hereby appropriated and granted, and may be selected by said State or Territory, in lieu of such as may be thus taken by pre-emption or homestead settlers. And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said State or Territory, where sections sixteen or thirty-six are mineral land, or are included within any Indian, military, or other reservation, or are otherwise disposed of by the United States: *Provided*, Where any State is entitled to said sections sixteen and thirty-six, or where said sections are reserved to any Territory, notwithstanding the same may be mineral land or embraced within a military, Indian, or other reservation, the selection of such lands in lieu thereof by said State or Territory shall be a waiver of its right to said sections. And other lands of equal acreage are also hereby appropriated and granted, and may be selected by said State of Territory to compensate deficiencies for school purposes, where sections sixteen or thirty-six are fractional in quantity, or where one or both are wanting by reason of the township being fractional, or from any natural cause whatever.' And it shall be the duty of the Secretary of the Interior, without awaiting the extension of the public surveys, to ascertain and determine, by protraction or otherwise, the number of townships that will be included within such Indian, military, or other reservations, and thereupon the State or Territory shall be entitled to select indemnity lands to the extent of two sections for each of said townships, in lieu of sections sixteen and thirty-six therein; but. such selections may not be made within the boundaries of said reservations: *Provided, however*, That nothing herein contained shall prevent any State or Territory from awaiting the extinguishment of any such military, Indian, or other reservation and the restoration of the lands therein embraced to the public domain and then taking the sections sixteen and thirty-six in place therein; but nothing in this proviso shall be construed as conferring any right not now existing.

"Sec. 2276. That the lands appropriated by the preceding section

action the lands in question in equity belong to the United States, and that consequently they could not be condemned for the uses of the Water Company.

The controversy reduces itself to the precise question whether when a forest reservation, subsequently proclaimed, includes within its limits a school section surveyed before the establishment of the reservation, the State may under § 2275, Revised Statutes of the United States, as amended in 1891, waive its right to such section and select other lands in lieu thereof.

The first part of the section, giving the right to select lands in lieu of such as were settled upon with a view to pre-emption or homestead, is clearly limited to settlements made before survey of lands in the field, and under the following provision, giving the right of selection to the State where the lands are mineral or are included in an Indian, military or other reservation or are otherwise disposed of by the United States, it well may be that, in the absence of the proviso, the right of selection would be confined to instances where the lands were unsurveyed

---

shall be selected from any unappropriated, surveyed public lands, not mineral in character, within the State or Territory where such losses or deficiencies of school sections occur; and where the selections are to compensate for deficiencies of school lands in fractional townships, such selections shall be made in accordance with the following principles of adjustment, to wit: For each township, or fractional township, containing a greater quantity of land than three-quarters of an entire township, one section; for a fractional township, containing a greater quantity of land than one-half, and not more than three-quarters of a township, three-quarters of a section; for a fractional township, containing a greater quantity of land than one-quarter, and not more than one-half of a township, one-half section; and for a fractional township containing a greater quantity of land than one entire section, and not more than one-quarter of a township one-quarter section of land: *Provided,* That the States or Territories which are, or shall be entitled to both the sixteenth and thirty-sixth sections in place, shall have the right to select double the amounts named, to compensate for deficiencies of school land in fractional townships."

when found to be mineral or included in a reservation, and this because if the lands were unreserved and not known to be mineral when surveyed the title would then vest in the State (*Sherman* v. *Buick*, 93 U. S. 209; *Heydenfeldt* v. *Daney Gold & Silver Mining Co.*, 93 U. S. 634; *United States* v. *Morrison*, 240 U. S. 192, 204, 207), and because lieu selections are usually, although not always, permitted where the right to the place lands is cut off before the time for the title to become vested. But the proviso, which was not originally in the statute, is an important part of it and, according to a familiar rule, must be given some effect. It reads:

"Where any State is entitled to said sections sixteen and thirty-six, or where said sections are reserved to any Territory, notwithstanding the same may be mineral land or embraced within a military, Indian, or other reservation, the selection of such lands in lieu thereof by said State or Territory shall be a waiver of its right to said sections." This language, while not as clear as it might be, operates, as we interpret it, to give to the State a right to waive its right to such lands where, as in this case, the same are included in a forest reservation after survey, that is, after the title vests in the State. Unless this proviso refers to lands, the title to which has passed to the State it adds nothing to the statute and performs no office whatever. This construction preserves the integrity of forest reservations, and permits the State to acquire other lands not surrounded by large tracts in such reservations which are withdrawn from settlement.

It is true that the interpretation of the statute has not been uniform in the Department of the Interior, and it has been otherwise construed in at least one of the federal courts, *Hibberd* v. *Slack*, U. S. Circ. Ct., S. Dist. of California, 84 Fed. Rep. 571. But the interpretation for which the State insists has been long given to it by the Interior Department. It was more than suggested in *Gregg* v.

*Colorado*, 15 L. D. 151, 154, and *Rice* v. *California*, 24 L. D. 14, 15, was adopted upon full consideration in *State of California*, 28 L. D. 57, and has been uniformly followed ever since. *Territory of New Mexico*, 29 L. D. 364; *School Land Opinion*, 30 L. D. 438; *Dunn* v. *California*, 30 L. D. 608; *Territory of New Mexico*, 34 L. D. 599; *State of California*, 34 L. D. 613.

In the brief presented by leave of court on behalf of the United States it is set forth that the rule laid down in *State of California*, 28 L. D., *supra*, is still adhered to by the Land Department; that selections aggregating many thousands of acres have been made in reliance upon it, and that no doubt large expenditures of money have been made in good faith upon the selected lands. It is therefore urged that such construction has become a rule of property. In this situation we should be slow to disturb a ruling of the department of the Government to which is committed the administration of public lands. *Mc-Michael* v. *Murphy*, 197 U. S. 304.

Furthermore, the reasoning upon which the departmental interpretation is founded commends itself to our judgment as best calculated to carry out the purposes intended to be accomplished by the statute in question.

It follows that the Supreme Court of California erred in its decision of the federal question involved. With the state questions we have no concern, their ultimate solution being a matter for that court. The judgment is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*