**256 P.2d 246**

**PONTON v. HOUSE.**

**No. 5695.**

Supreme Court of Arizona.

April 20, 1953.

Milton L. Ollerton, Phoenix, for appellant.

Edward B. Ashurst, Wickenburg, for appellee.

LA PRADE, Justice.

This case presents an appeal from a portion of the judgment quieting title in appellee, John House, plaintiff below, in and to certain mining claims, which in his mining locations dated April 3, 1951, were designated as Gold Leaf 1, 2 and 3. Appellant Mrs. M. S. Ponton, defendant below, does not question the judgment insofar as it relates to Gold Leaf claims 2 and 3. But she denied that plaintiff had any right, title or interest in the so-called Gold Leaf No. 1, and alleged that she owned the claim by virtue of a quitclaim conveyance to her executed March 31, 1948, by one J. C. Coupal who it was claimed located the same ground March 29, 1948, under the name of Tiger No. 1. By counterclaim defendant asked to have the title to the ground (Tiger No. 1) quieted in her.

Plaintiff admitted in his answer to the counterclaim that Coupal posted a notice of location and recorded same; and that he had discovered "a deposit of rock bearing precious minerals." Plaintiff at the trial and in his briefs admitted that defendant had performed the additional statutory discovery work. Plaintiff denied that defendant had performed the necessary assessment work for the year 1950.

It was also admitted that Coupal had quitclaimed any interest he had to defendant, Ponton.

By way of digression and enlightenment it appears that the original discovery on this claim was made in 1914 by one Sisson who christened his claims El Tigre (The Tiger). Considerable development and mining was done by the El Tigre Mining Co. Apparently this company fell by the wayside (the record only hints). Presumably the ground was thereafter open to location for in 1932 two men named Spencer and Cowden located three claims, named by them Gold Bullion No. 1 and No. 2 and Velma, covering the identical ground of El Tigre Nos. 1, 2 and 3. (Bullion No. 1 same as El Tigre No. 1.) These notices of location were original locations and not notices of re-location.

In 1933 or 1934 the defendant, Mrs. Ponton, attempted to locate the same claims. She was met by a quiet title action filed by J. H. Patterson, who secured a judgment quieting title and possession in him of twelve mining claims designated by him as the "Blackbird Group", and admittedly containing the claim here in question. It is admitted by all concerned that the claims were first called El Tigre, then Gold Bullion, then Blackbird, and later, by the plaintiff, "The Gold Leaf Group".

One would think that after the Patterson judgment Spencer and Cowden were out of the picture, but not so, for on April 28, 1938, Spencer (alone) conveyed an undivided one-half interest in the Gold Bullion No. 1 to one John Graef. Nothing further appears from the record until 1944 when there was filed on behalf of Graef a notice of intention to hold and claim of exemption from assessment work. Like notices were filed for the years 1945 to 1949, both inclusive.

Plaintiff claims that the foregoing historical background demonstrates that the title to Tiger No. 1 was in Graef at the time of the attempted location by Coupal (defendant's predecessor in interest) in April of 1948.

Plaintiff's proof to demonstrate that the ground was not open to location in 1948 consisted of:

1. Copies of recorded notices of location by Spencer and Cowden.

2. Quitclaim deed of undivided one-half interest in Gold Bullion No. 1 by Spencer to John Graef.

3. Graef's notices of intention to hold and claims of exemption.

No attempt was made to account for the undivided one-half interest of Cowden. No proof was offered or received that Spencer and Cowden had discovered mineral in place and complied with the provisions of Sections 2268, 2269 and 2270, R.C.A.1928 (then applicable), now Sections 65–103, 4, 5, A.C.A.1939, relating to discovery work and monumenting.

306

This court pointed out in Brethour v. Clack, 31 Ariz. 24, 250 P. 254, that

"It is of course the law that a mining location is based wholly upon a discovery of mineral, and until such discovery is made no rights are conferred by the performance of any of the other steps requisite for location. Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567; Butte & S. Co. v. Clark-Mont. Co., 249 U.S. 12, 39 S.Ct. 231, 63 L.Ed. 447; Creede [& Cripple Creek etc.] Co. v. Uinta [Tunnel Min. etc.] Co., 196 U.S. 337, 25 S.Ct. 266, 49 L.Ed. 501."

and in Zeiger v. Dowdy, 13 Ariz. 331, 114 P. 565, 566, it was held that

"It is essential to the validity of a mining claim that the ground be mineral in character, and that a discovery of mineral within the confines of the claim be made."

■ In Gemmel v. Swain, 28 Mont. 331, 72 P. 662, 663, it was held that

"A notice of location (for such these notices purported to be) posted upon mineral land before discovery is made is an absolute nullity."

Acts of location confer no right in the absence of discovery. Cole v. Ralph, supra. The mere recording in the office of the County Recorder of a copy of the location notice does not prove that mineral in place was discovered, U. S. v. Bunker Hill Co., 1922, 48 L.D. 598, and that the statutory discovery work and monumenting was performed. Flick v. Gold Hill, etc., Min. Co., 8 Mont. 298, 20 P. 807; Round Mountain Min. Co. v. Round Mountain Sphinx Min. Co., 36 Nev. 543, 138 P. 71; Childers v. Lahann, 19 N.M. 301, 142 P. 924.

In its memorandum opinion the court observed that "while this evidence is scanty, it appears that G. B. Spencer and T. E. Cowden, located this claim on the 16th day of July, 1932". The court then surmised that Cowden had abandoned his interest to Spencer, or that if there was no abandonment that the co-tenant in possession (Spencer) could convey for both of them or in any event that Spencer conveyed his one-half interest.

There was no evidence of what happened to the interest of Patterson after he got judgment quieting title in him, and from which there was no appeal. Nevertheless the trial court concluded that the Patterson location was *invalid,* or if valid that it had been abandoned, and having been abandoned revived the interest of Spencer.

■ As we view the record and the law applicable there is nothing to indicate that Spencer and Cowden ever made a valid location, or had anything to convey to Graef in 1938. Graef's notices of intention to hold and claims of exemption from assessment work were nullities unless he had an interest in the claim based on a valid location. Eagle-Picher Mining & Smelting Co. v.

Meyer, 68 Ariz. 214, 204 P.2d 171. We hold that the trial court erred in finding Graef had an interest in the ground that he purportedly acquired by quitclaim deed from Spencer, predicated on the pretended location of Spencer & Cowden.

The judgment dismissed defendant's counterclaim. This judgment of dismissal followed a recitation to the effect that the defendant had failed "to prove the material allegations of her answer and counterclaim to the satisfaction of the court or by preponderance of the evidence." The rendering of this judgment against the defendant on the counterclaim is assigned as error. The memorandum opinion of the trial court clearly indicates that the court was of the opinion that the ground in question was not subject to location at the time of the Coupal location for the reason that Graef was the owner thereof, by virtue of the conveyance from Spencer to him. Mrs. Ponton unequivocally testified that she had performed the assessment work for 1950. Her testimony was that she had employed three miners who did the work for her in her presence; that these men were employed 5½ days in June of 1950 and one day in September, 1950, at a total expense to her of $137. She also testified that she had purchased powder in the sum of $15 and had rented a compressor costing her $5 per day, which compressor was used by the men in performing the work. This testimony of Mrs. Ponton was in no way denied. She was asked upon cross-examination, by way of impeachment, if this work had been done by Mr. Plummer for his own benefit, on a pretended location by him for himself. She denied this. This impeaching question was not followed up and plaintiff offered no competent testimony to refute the testimony of Mrs. Ponton. In view of this situation it appears that the judgment of dismissal on defendant's counterclaim was not justified by the evidence and is contrary thereto.

At this point we believe that the following observation of counsel for plaintiff is entirely apropos. He said:

"It boils down to this, Coupal made a valid location or he didn't. If it belonged to Graef, it wasn't a good location. If it was, we are out, that is all there is to that."

That portion of the judgment relating to Gold Leaf No. 1 (Tiger No. 1) is reversed with directions to dismiss plaintiff's complaint as to Gold Leaf No. 1 and enter judgment for defendant on her counterclaim, and quieting title in her to the ground covered by the location of Coupal and designated as Tiger No. 1, otherwise the judgment is affirmed.

STANFORD, C. J., and PHELPS, UDALL and WINDES, JJ., concur.