257 P.2d 860

**STATE v. TRACY et al.**

No. 5584.

Supreme Court of Arizona.

June 1, 1953.

**8**

Fred O. Wilson, Atty. Gen., and R. G. Langmade, Asst. Atty. Gen., for appellant.

Shute & Elsing, of Phoenix, for appellees.

UDALL, Justice.

Sam P. Tracy and P. D. McIntyre, plaintiffs, brought an action against the State of Arizona, et al., and recovered a judgment against the State for damages in the sum of $5,000, from which judgment this appeal was taken.

The parties are now before us in the reverse order of their appearance in the trial court, but for convenience reference will be made to them herein as they there appeared, namely as plaintiffs and defendant.

Originally the action was directed against the five members of the State Highway Commission, the State Engineer, and the Yount Construction Company—the latter being the contractor on a strip of the Ehrenburg-Wickenburg Highway (U. S. 60, 70). They were charged with having entered upon and having occupied a group of 26 unpatented mining claims—in the La Paz mining district of Yuma County—allegedly belonging to the plaintiffs, without either obtaining their consent or filing a proceeding to obtain a right of way by condemnation. Later the State of Arizona was, by court order, made a party defendant and the complaint against the contractor dismissed. Following a trial before the court, sitting without a jury, judgment was entered for the individually named defendants, the State alone being held liable for the taking of property without due process. The court made no findings of facts as a request for same was withdrawn.

The amended complaint alleges that plaintiffs were and now are the owners of and in possession of the unpatented mining claims in question. The defendant by its answer denies the purported mining claims are valid and subsisting; denies that plaintiffs are the owners thereof; and alleges that the construction by the State of this highway across these claims was wholly upon land within a 400-foot easement for right of way duly and regularly acquired by the State, from the United States, on March 6, 1947.

There is no question about the validity of the right of way easements, but these were expressly given "subject to all valid existing rights". As to the land within the easements the defendant, as grantee, now occupies the position of the federal government with the right to possession unless plaintiffs can show a prior right to possession by operation of law through compliance with the applicable mining laws. Therefore, the existence or nonexistence of valid unpatented mining claims prior in time to said highway easement is the narrow question.

At the trial the plaintiffs limited their proof to six claims (five placer and one lode), which for convenience will be listed in three groups, viz.:

First Group

Nugget No. 2, a 20-acre placer claim, purportedly located by one Edward Beggs, who filed a location notice dated June 1, 1911, with the County Recorder of Yuma County.

Surething No. 2, a 20-acre placer claim, purportedly located by Edward Beggs and M. Y. Haggerty who filed a location notice dated May 13, 1910 with the County Recorder of Yuma County. These claims are on the West half of Sec. 36, T. 4 N., R. 21 W., G. & S. R. B. & M.

Second Group

High Bar Nos. 1, 2, and 3.

These are the placer claims of 40 acres each, purportedly located by Edward Beggs and M. Y. Haggerty; the location notices were dated January 1, 1916 and recorded with the County Recorder of Yuma County, Arizona. These claims are on Sec. 2, T. 3 N., R. 21 W., G. & S. R. B. & M.

Third Group

Empire Lode claim, purportedly located by Edward Beggs and M. Y. Haggerty, amended location notice dated October 2, 1916, recorded December 1, 1916.

The evidence shows that two placer claims, Surething No. 2 and Nugget No. 2, substantially overlap the Empire Lode claim, and at the time of oral argument before us counsel for plaintiffs stated they were limiting their claim for damages to the gold placer claims involved and that the lode claim need not be considered. Inasmuch as the end result would be the same, we shall confine our discussion to the placer claims.

In passing, it might be noted that other than placing in evidence certified photostatic copies of the location notices above referred to, there was not a scintilla of evidence offered by the plaintiffs to establish that the original locators, Beggs and Haggerty, had within the time allowed by law, or at all, made a discovery of placer gravel on any of the claims; had monumented the claims on the ground so that their boundaries could be readily traced; or, had posted a copy of location notices thereon. Furthermore it appears that the notices of location of the High Bar group fail to make reference to a natural object or permanent monument as will identify the claims, which is required by statute. 65-107, A.C.A.1939.

■ We pointed out in the recent case of Ponton v. House, 75 Ariz. 303, 256 P.2d 246, 247, that until discovery of mineral is made no rights are conferred by any of the other steps requisite for location and that

"* * * The mere recording in the office of the County Recorder of a copy of the location notice does not prove that mineral in place was discovered * * * and that the statutory discovery work and monumenting was performed. * * * (Citing cases.)"

While the Ponton case, supra, was a quiet title action involving lode claims, the law is well settled that so far as the character of the deposits will admit, the principles governing lodes apply with equal force to placers. 1 Lindley on Mines, §§ 335, 337;

Garibaldi v. Grillo, 17 Cal.App. 540, 120 P. 425.

Assuming for the moment that valid locations were made in the first instance, it manifestly appears that the title of plaintiffs to all of said claims is hopelessly defective in that there is no connected chain of title from the original locators. Edward Beggs, on January 23, 1934, took the necessary steps under Section 65-110, A.C.A.1939, to advertise out the interest of M. Y. Haggerty (his colocator) for failure to contribute his proportion of the expense of annual labor. There is no conveyance from Beggs to the plaintiffs; in fact the latter's record title rests upon the following instruments, viz.:

1. R. H. Benton (a complete stranger to the title), by quitclaim deed dated June 17, 1933, purportedly conveyed an undivided one-third interest in the six claims in question (as well as 20 other claims) to plaintiff P. D. McIntyre.

2. P. D. McIntyre, on July 20, 1936, attempted to forfeit out the interest of Edward Beggs, who was then deceased, by serving notice upon the administrator of his estate that he had expended $2500 on said claims, but nowhere is it shown how or when McIntyre became a co-owner of Beggs as is required in order that "notice to co-owner to contribute" have any legal effect. Furthermore the notice was not recorded within ninety days as is required by Section 65-110, A.C.A.1939. See Lindley on Mines, Vol. 2, 3rd Ed., § 646, page 1622.

3. P. D. McIntyre and R. H. Benton, by quitclaim deed dated February 23, 1937, purportedly conveyed an undivided one-third interest in and to said claims to plaintiff Samuel P. Tracy.

4. P. D. McIntyre, by a quitclaim deed dated June 23, 1950, conveyed all of the claims in question to Sam P. Tracy, to be held "In trust as the interest of said P. D. McIntyre may hereafter appear".

The question arises: Was the land public domain subject to location under the mining laws of the United States at the time the Beggs and Haggerty locations were made?

■ Plaintiffs' proof was entirely silent as to the status of the land at that time. The defendant, however, introduced official records indubitably establishing that the land in question was, during the period May 15, 1876 to November 22, 1915, within the boundaries of the Colorado River Indian Reservation. The reservation boundary, however, was amended on the date last named, which change excluded therefrom all of the lands with which we are here concerned. A mining claim to be valid must be filed upon public land open and subject to entry at the time the location is made. Sec. 65–101, A.C.A.1939; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735; McKenzie v. Moore, 20 Ariz. 1, 176 P. 568. Lindley on Mines, 3rd edition, §§ 183, 184, et seq., makes it clear that a valid claim to mineral land could not be initiated on an Indian Reservation as "The lands embraced therein are no longer public lands".

■ The change of reservation boundaries in the year 1915 did not have the legal effect of validating prior defective entries and there was no effort made to thereafter relocate the claims. Plaintiffs' rely upon the case of Noonan v. Caledonia Gold Mining Co., 121 U.S. 393, 7 S.Ct. 911, 30 L.Ed. 1061, but an examination of the facts therein disclose that the mining claims involved were relocated after the reservation boundary was changed. We therefore hold, as to the "group one" claims—which were initiated in the years 1910 and 1911—that they were and are a nullity and the plaintiffs cannot predicate any rights thereon.

■ The three High Bar claims on section 2 were purportedly located on January 1, 1916. This school section (along with section 36, supra), as not then known to be mineral lands, see United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473; State of California v. Deseret Water, Oil & Irrigation Co., 243 U.S. 415, 37 S.Ct. 394, 61 L.Ed. 821, became the property of the State of Arizona with the approval of a survey plat on December 6, 1915. See, Arizona Enabling Act of June 20, 1910, § 24. Cf. Campbell v. Flying V Cattle Co., 25 Ariz. 577, 220 P. 417. It is evident, and we so hold, that these claims are void and of no effect as the lands were not then subject to location as a part of the public domain of the United States.

No effort was thereafter made to locate claims under the State law, § 38, Chap. 5, Laws of 1915, 2d S.S. (now appearing in amended form as Sec. 11–314, A.C.A.1939), which makes provision for locating and leasing mineral lands owned by the State of Arizona. It is interesting to note that the Sixty-ninth Congress, on January 25, 1927, Chap. 57, specifically granted to the states—subject to certain provisions and exceptions—school sections that were known to be mineral in character. See, 43 U.S.C.A. §§ 870, 871, 44 Stat. 1026. The State of Arizona promptly accepted this additional grant. Chap. 83, S.L.1927. See, Rodgers v. Berger, 55 Ariz. 433, 103 P.2d 266, for an interpretation of these Acts as applied to mining claims on a school section located prior to their passage.

█ Finally the plaintiffs urge that the judgment should be sustained upon the theory of adverse possession. 30 U.S.C.A. § 38, Sec. 2332, U.S.R.S. provides that, in the absence of any adverse claim, where parties

"* * * have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto * * *".

In the case of Eagle-Picher Mining & Smelting Co. v. Meyer, 68 Ariz. 214, 204 P. 2d 171, where, as here, the parties were claiming under a deed or deeds, we held that the five-year statute of limitation, Sec. 29–102, A.C.A.1939, applied.

As we have heretofore pointed out, the purported location of all the mineral claims in question by plaintiffs' predecessors in interest were invalid when made, for the reason that none of the land was then public domain open to entry.

The State of Arizona held the title in fee, with mineral rights, from December 6, 1915 until June 23, 1938. On this latter date the State exchanged Lot 1, N½ NW¼ of Section 2, T. 3 N., R. 21 W., and the W½ of Section 36, T. 4 N., R. 21 W., for other federal lands. Plaintiffs' evidence establishes that all of the mining claims in question were upon the lands just described, save and except part of the "High Bar Group" which was on Lot 2 (NW¼NE¼) of Section 2, supra. For reasons not apparent from the record, this latter tract (comprising approximately 40 acres) was not included in the exchange and title to it still remains in the State.

█ From and after the date the federal government reacquired the land, supra, it was possible for plaintiffs to mature an unpatented mining claim by adverse possession. The documentary evidence in the record—affidavits of performance of annual labor and a notice of intention to hold mining claim—is incomplete and does not present even prima facie proof of "possession and working of the claims" for a full five-

year period immediately preceding the grant of the easement, which would be the shortest consecutive period under which plaintiffs could acquire such rights as 30 U.S.C. A. § 38, supra, does not relieve claimants from the doing of annual assessment work to hold their claims. The plaintiff Tracy, having also testified that there were no mining operations carried on after the year 1938, with the exception of some sampling and testing (primarily in preparation for this suit), we hold that there is no reasonable evidence upon which a finding that the required annual assessment work was performed could be based.

Under the record of this case, for the reasons above stated, we hold as a matter of law that defendant, State of Arizona, was not liable in damages.

We deem it unnecessary to consider the other assignments of error.

The judgment is reversed with directions to dismiss plaintiffs' complaint.

STANFORD, C. J., and PHELPS and LA PRADE, JJ., and PATTERSON, Superior Court Judge, concur.

WINDES, J., being disqualified, PATTERSON, Judge of the Superior Court of Yavapai County, was called to sit in his stead.