371 P.2d 587

James A. WOOLSEY, Appellant,

v.

Obed M. LASSEN, State Land Commissioner, and Pima Mining Company, a corporation, Appellees.

No. 6705.

Supreme Court of Arizona.

En Banc.

May 16, 1962.

Lesley B. Allen, Lakeside, and W. Ed-. ward Morgan, Tucson, for appellant.

Wade Church, Former Atty. Gen., Robert Pickrell, Present Atty. Gen., for appellee Obed M. Lassen, State Land Com'r.

Victor H. Verity, Tucson, Ariz., Musick, Peeler & Garrett, Los Angeles, Cal., Darrow, D'Antonio, Hayes & Morales, Tucson, for appellee Pima Mining Co.

ROBERT E. McGHEE, Superior Court Judge.

This case is an appeal by the plaintiff Woolsey from the decision of the Superior Court finding against him on his appeal from the decision of the State Land Commissioner denying an application for a min-

eral lease. The defendant, Pima Mining Company, intervened as the real party in interest. The parties will hereafter be identified as in the proceeding in the Superior Court.

The defendant, Pima Mining Company, is the assignee of a mining lease of three mining claims on state mineral lands. Both the original application for lease and lease were designated as "Placer" by typewritten entry on the printed forms. The lease, dated November 29, 1950, provided, among other things, that "This lease confers on the lessee the right: (1) To extract and ship minerals, mineral compounds and mineral aggregates, herein called 'minerals' or 'ore', from the property set forth, located within planes drawn down vertically through the exterior boundary line of each claim."

On January 6, 1957, plaintiff went upon the three claims in question and filed location notices, and on January 8, 1957, filed a lease application with the defendant, State Land Department, designating the claims as "Type B" mineral claims as designated in § 27–232(B), A.R.S. At that time the defendant, Pima Mining Company, was in possession conducting an extensive pit copper mining and milling operation.

On February 15, 1957, the lease application was denied without hearing on the ground that there was an existing mineral lease held by the Pima Mining Company. Plaintiff appealed to the Superior Court of Pima County and a trial de novo was had, with judgment for defendants. In brief, the Superior Court held that the lease of Pima Mining Company carried rights to all minerals on the claims; that dual leasing is not permitted by Arizona law; that Pima Mining Company was in possession under a valid lease; and that the plaintiff could gain no rights by trespass.

The position of the plaintiff was that the state leasing laws and administrative practices provided for multiple leasing of both lode claims and placer claims to cover identical mineral lands of the state, both located by reference to the Public Survey in accordance with § 27–232(B), A.R.S., and that the lease was invalid because of failure to discover valuable mineral prior to location.

Plaintiff offered proof that the State Land Department had previously issued instruction sheets to the public to the effect that multiple leasing of mineral was permitted in Arizona, that the State Department of Mineral Resources had issued a booklet with information to the same effect as late as 1951, and that such had been the understanding of mining authorities and mining men in Arizona at the times involved in the case. The plaintiff contends that an administrative practice and procedure arose which should be of great persuasion and should result in con-

struing the statutes in question as meaning that both lode and placer claims were contemplated by the legislature in legislation governing the leasing of mining claims.

The position of the defendants was that defendant Pima Mining Company was in exclusive possession by virtue of a lease entitling it to all the minerals within the boundary lines of the claims, and that the plaintiff as a trespasser could obtain no adverse rights.

Plaintiff makes 15 assignments of error directed to the findings of fact, conclusions of law, and refusal of the court to grant a new trial. Several of the assignments do not distinctly specify the grounds of error relied upon; however, those specifying grounds are directed to the issue of the nature of the original lease assigned to Pima Mining Company, and the validity of the plaintiff's purported overlapping location, and will be considered together.

The following sections of the Arizona Revised Statutes were in effect at the time of the original location of the claim:

"§ 27–231. Location of mineral claim on state land

"A. Any citizen of the United States, partnership or association of citizens, or corporation organized under the laws of the United States or any state or territory thereof, who discovers a valuable mineral deposit on any state land may enter upon and locate the deposit as a *mineral claim*. (Italics added)

"B. The term 'mineral' includes mineral compound and mineral aggregate."

"§ 27–232. Methods of locating claims; extent of extralateral rights

"A. If the mineral deposit is a vein, lode or ledge, it may be located in the manner provided for the location of mineral claims upon the public domain of the United States. Upon obtaining a lease on land so located, as provided in this article, the lessee shall be entitled during the term of the lease to extralateral rights in the discovery vein only to the same extent as similar mineral locations upon the public domain of the United States under the provisions of Title 30, United States Code, section 26 (U.S. revised statutes, section 2322).

"B. Any mineral claim, however, may be located in conformity with the lines of the public land survey, embracing not more than twenty acres. In such case the location shall be marked upon the ground by erecting a monument or placing a post extending at least three feet above the surface of the ground at each angle corner of the claim, as nearly as possible, and by placing in each monument, or on each

post, a memorandum stating the name of the locator, the name of the claim and designating the corner by reference to cardinal points, and within thirty days thereafter by filing for record in the office of the county recorder of the county in which the claim is located, a notice of location which shall set forth:

"1. The name of the locator.

"2. The name of the claim.

"3. The date of location.

"4. The legal description of the land claimed."

Because of plaintiff's contention that the historical background of the above and other related statutes require an interpretation that both lode and placer claims are contemplated, the following outline of previous statutes is given.

Section 11–314 of the 1939 Arizona Code Annotated provided that the manner of locating state mineral lands for leasing should be "* * * in accordance with the law of the state regulating the location of mineral claims on government lands."

The Legislature of the State of Arizona in 1941 repealed the above section and set forth detailed procedures for leasing land for mining purposes. The Act provided that "Placer deposits upon state lands shall be subject to location and lease upon the terms provided in this Act for the location and lease of deposits of mineral in place, except that no discovery work shall be required." Section 11–1606, A.C.A. 1939 (Laws 1941, Ch. 78, § 6). This section was expressly repealed by the laws of 1945, Chapter 87, § 6, and the words "placer" and "placer deposits" have not since appeared in laws related to leasing of State land of Arizona.

Plaintiff contends that the repeal of the above quoted section had no effect upon "placer claims," as the section dealt with "placer deposits" and not placer claims. However, the Legislature in providing for the location of "placer deposits" could have had in mind only one thing, the location of placer claims. Plaintiff states that the Legislature cannot do away with "placer deposits", geological formations. This is true, but the Legislature by the Act of 1945 presumably wished to change the law and if possible the court should give some effect to it if the purpose is reasonably ascertainable, Beach v. Superior Court, 64 Ariz. 375, 173 P.2d 79 (1946). Therefore, in repealing § 11–1606, A.C.A. 1939, the Legislature could only have intended to do away with the location of the specific type of mining claim known as a "placer claim."

"It is fundamental that the repeal of an Act takes away from it all force, and the Act is totally destroyed." Gustafson v. Rajkovich, 76 Ariz. 280, 285,

263 P.2d 540, 543, 40 A.L.R.2d 520, (1953).

The location of mining claims upon lands of the State of Arizona is governed by the laws of the State of Arizona and not by the laws of the United States, State v. Tracy, 76 Ariz. 7, 257 P.2d 860 (1953); State ex rel. Mullen v. Hendrick, 51 Ariz. 180, 75 P.2d 366 (1938). However, § 27–232, subd. A, A.R.S., provides that "if the mineral deposit is a vein, lode or ledge, it may be located in the manner provided for the location of mineral claims upon the public domain of the United States." The obvious purpose of this section was to provide for the location of claims with extralateral rights as opposed to the location of a "mineral claim" in conformity with the lines of the public land survey as provided in § 27–232, subd. B, A.R.S. The reference to the *manner* of location has obvious reference to the physical acts required to initiate a claim for leasing such deposits and certainly could not be construed to incorporate into state law an inference as to the manner of location of placer deposits when the following subsection B specifies the manner of locating "any mineral claim" by conformity with lines of the public land survey.

The claims of the plaintiff were located in conformity with the lines of the public land survey, as were the claims of the Pima Mining Company, under authority of § 27–232, subd. B, A.R.S. It is clear that the Legislature would and could not grant a lease of identical rights to two different parties. Therefore, unless there exists an implied intent of the Legislature to grant co-existing lode and placer claims it would seem that a state lease would carry rights to all minerals.

Plaintiff argues that because of the well known distinction between lode and placer claims recognized by Acts of Congress, and in the mining field generally, the Legislature would have so stated in positive language if it had intended to abolish the distinction.. Plaintiff implies that under Federal Law there existed over the last 70 years a liberal policy of overlapping of placer and lode claims. However, a review of Title 30 U.S.C.A. §§ 35 and 37, and cases noted therewith, will cast considerable qualification upon such an interpretation and would indicate that the " * * * holder of a placer claim is entitled to reduce to possession and enjoy any vein that he may encounter within the downward extension of his boundary lines, provided it has not already been appropriated." 36 Am. Jur., Mines and Minerals, § 113. Also see Clipper Mining Company v. Eli Mining & Land Company, 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944, (1904), holding that one attempting to locate a lode claim upon a valid placer claim against the will of the placer locator was a trespasser and could not gain title by the trespass. On this point it would seem that a large part of plaintiff's

argument is based upon a false premise of historical background. Furthermore, plaintiff cites no case supporting his contention.

A review of the provisions of the past Arizona codes bearing upon the execution of mining leases is helpful in determining the extent of the authority of the Land Department to grant leases carrying rights to all minerals to one locator.

Ch. 5, § 38, Session Laws of 1915 (2d S.S.), provided for mining leases for a period of two years, the holder having a right to a contract prior to the expiration of the lease upon " * * * such obligations, terms, and conditions as may be agreed upon by said department and the said lessee."

Section 11–314, A.C.A. 1939, provided for location of mining claims for leasing in the same manner provided by State statute for location of claims on government lands. It further provided for an initial 2-year lease, ·" * * * before the expiration of which time the department may enter into a contract with the lessee for the further development and operation of *any mine* upon such claim, upon such terms as may be agreed upon." (Italics added.)

The 1941 Act provided:

"Sec. 5. TERMS OF LEASE. (a) Every mineral lease of state lands shall be for a term of twenty years. The lease shall confer the right: 1. to extract and ship ores and mineral substances from the claim, located within planes drawn vertically downward through the exterior boundary lines thereof * * *." Chapter 78, § 5, Session Laws of 1941.

The 1945 Act, now § 27–235, A.R.S., in effect at the time here in question provided:

"B. The lease shall confer the right:

"1. To extract and ship minerals, mineral compounds and mineral aggregate from the claim located within planes drawn vertically downward through the exterior boundary lines thereof. In cases of leases made pursuant to locations under subsection A of § 27–232, the lease shall confer extralateral rights in the discovery vein similar to those given locators upon the public domain of the United States under the provision of Title 30, United States Code, § 26 (U.S. revised statutes, section 2322)."

From the above sections it would seem that there has not been in the past and there is now no direct or implied intention expressed that any lease should reserve minerals for location by another locator. On the contrary, the acts from 1915 through 1945 all favor the right of the Land Department to lease all minerals to the original locator.

■ The lease in the instant case provided:

"This lease confers on the lessee the right:

1. To extract and ship minerals, mineral compounds and mineral aggregates, herein also called 'minerals' or 'ore' from the property above set forth located within planes drawn vertically downward through the exterior boundary line of each claim,"

thereby leasing all rights authorized by § 27–235, A.R.S. Furthermore, assignments of the leases from the locators and original lessees to the plaintiff Pima Mining Company contained an expressed intention to assign "for the purpose of metal mining both lode and placer." Arizona mineral leases of state land can be assigned only upon the express written consent of the State Land Department, § 37–286, subd. B, A.R.S. It should be axiomatic that the State Land Department having leased all mineral rights in the claims, there remained no interest available to plaintiff by mineral lease.

■ Plaintiff further contends that because for several years, both before and after the 1945 amendment, the State Land Department gave out instruction sheets stating that "A lode claim can be located over a placer claim and vice versa" there arose an administrative practice sanctioned by the Legislature and persuasive in con-struing the true meaning of the particular statutes. In this argument plaintiff ignores Rule 5 of the Rules and Regulations of the State Land Department filed with the office of the Secretary of State in accordance with administrative procedure, § 41–1001 et seq., A.R.S. which regulation provides that:

"When an application for lease or permit covers land already under lease for the same purposes, such application will be rejected by the Commissioner to the extent that the Land described therein is included within an existing lease or permit."

The foregoing rule is obviously in harmony with legislative intent and justified the Commissioner's rejection of plaintiff's application for the lease on this specific ground. Further, since the Legislature specifically repealed the provision for placer claims, there remains no ambiguity to construe. The fact that the Land Commissioner failed to keep himself informed on changes made in the law and issued rules or instruction sheets conflicting with existing statutes is of no effect. McCarrell v. Lane, 76 Ariz. 67, 258 P.2d 988 (1953); Arizona v. Drew, 83 Ariz. 91, 316 P.2d 1108.

■ Plaintiff contends that because the lease application of Pima Mining Company bore the designation of "Placer" the body of the lease should be construed to cover the lease of only placer deposits.

The nature of an instrument is determined by the effect the law gives to its terms and not by the title by which the parties have designated the instrument. Whalley v. George, 52 Ariz. 267, 80 P.2d 449 (1938); Russell v. Golden Rule Mining Co., 63 Ariz. 11, 159 P.2d 776 (1945). The legislature by the 1945 act provided for only two types of mineral claims, with or without extralateral rights. The lease by its terms covered "minerals, mineral compounds and mineral aggregates."

"The legislative intent in most statutes is to give the word 'mineral' its widest significance unless there are specific restrictions, or something in the context of the mineral legislation to control its meaning." 2 American Law of Mining, § 12.10, p. 636. (Martz ed. 1960).

An aggregate is composed of a mixture of substances separable by mechanical means (Webster) and obviously includes placer deposits. The terms "minerals, mineral compounds and mineral aggregates" include all the mineral substances included in the traditional lode or vein claims and also in placer claims. The use of the designation "Placer" on the lease form cannot limit the wide and inclusive rights granted in the body of the lease. It appears that the original application for a lease did not contain a designation of either "lode" or "placer" and was rejected by employees of the Land Department until such time as the designation was inserted in the application. While such information may have been of use to the Land Department, it had no right to require the locator to thereby limit the type of mineral the locator might claim.

The plaintiff questions the validity of the defendant's lease on the ground that there was no original discovery of mineral value. This issue is governed by the case of Bagg v. New Jersey Loan Co., 88 Ariz. 182, 354 P.2d 40 (1960). This court there held that, in an action to obtain possession of a mining claim, the possession of which has resided with the adverse party for some time, the claimant may not recover, although the adverse party's title to right to possession is defective, unless the claimant can show a superior right to possession in himself. Moreover, we indicate that if a subsequent locator tries to locate ground he knows is being mined by another, and attempts by so doing to prevail by reason of technical defects in the title or right to possession of the prior party, his attempted location is void for lack of good faith. Thus, the plaintiff cannot win on this line of attack.

We take judicial knowledge that in Arizona during recent years there has come about through advanced methods of mining, milling and ore reduction the

practice of mining large low-grade disseminated ore bodies, often covered by alluvial material to some depth. Ususally the alluvial material is of no value and must be removed prior to mining. Lodes or veins often cannot be discovered on the surface. Only chaos could result from dual leasing under such circumstances. This knowledge must have been available to the Legislature when framing the 1945 Act and it is logical to assume that it desired to give stability to an industry which cannot be developed without large capital outlay. This practical problem of modern day mining economics has been recognized elsewhere.

"The distinction between lode and placers as well as extra lateral rights is not favored in state mineral land leasing and is on the verge of extinction." 2 American Law of Mining, § 12.12 p. 642 (Martz ed. 1960).

Affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.

NOTE: Justice LORNA E. LOCKWOOD, having disqualified herself, the Honorable ROBERT E. McGHEE of the Superior Court of Gila County, Arizona, was called to sit in her stead and participate in the determination of this appeal.