428 P.2d 148

Howard A. BIRCHFIELD, Sr., Appellant,

v.

C. THIERCOF and Joffre Marcil, Appellees.

No. 2 CA–CIV 290.

Court of Appeals of Arizona.

May 26, 1967.

Rehearing Denied June 29, 1967.
See 429 P.2d 512.

Cattany & Howe, by Robert E. Cattany, Tucson, for appellant.

Smitherman & Whitney, by James D. Whitney, Bisbee, for appellees.

MOLLOY, Judge.

This is an appeal from a quiet title judgment as to four unpatented mining claims in Cochise County. Both the plaintiffs and the defendant moved for summary judgment and the trial court granted the motion of the plaintiffs.

The area of the four lode claims in question was originally located in 1946 by M. W. Fry and Alva Green. The claims were given the names Lone Star Nos. 1 through 4 inclusive. There is no issue raised as to the validity of these original claims. The plaintiffs allege that they are the successors in interest of these original claimants. In affidavit form, they presented satisfactory evidence of a chain of title from the afore-

said M. W. Fry and Alva Green through various successors in interest to a grantee designated, in a deed executed June 22, 1950, as "Fluorspar Producers Corporation." There is a gap in the chain of title at this point in the record below, the next conveyance being from "Arizona-Eastern Fluorspar Corporation" to one of the plaintiffs, the deed being dated April 23, 1957, and recorded January 27, 1964.[1] The complaint herein was filed on August 28, 1964.

In addition to the foregoing, there were presented to the lower court uncontroverted affidavits that Arizona-Eastern Fluorspar " * * * expended approximately $40,000 in development work * * * " on these claims in 1953; and, that the plaintiffs did the annual assessment work on the claims in question from 1958 through 1963 inclusive. Other than the foregoing, the record shows no possessory acts on the part of the plaintiffs as to these claims.

Affidavits also establish that since November of 1963, the defendant has been in actual possession of said mining claims, and that in August of 1964, one of the plaintiffs and an agent attempted to go upon the claims to do the annual assessment work and were forcibly prevented from entering the claims by the defendant and his agents.

According to the record before us, in November of 1963, a certain Mrs. Gabriel M. Camara had located the claims in question and in April of 1964 she conveyed her interest in these mining claims to the defendant. Subsequently, the defendant relocated the claims, changing the names from Lone Star Nos. 1 through 4 to H and D Mine Nos. 1 through 4. There is no question but what these locations of Mrs. Camara and the defendant were proper, providing the claims were open to location at the respective times. The entry of Mrs.

Camara and the defendant upon these claims appears from the record to have been a peaceful one.

In considering whether a summary judgment was properly rendered, this court must give to the party against whom judgment was rendered the benefit of any doubts left open by the record presented below. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962); Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967). The rule of procedure under which this judgment was rendered particularizes the requirements:

> "56(e) Form of affidavits; further testimony; defense required. Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. *When a motion for summary judgment is made and supported as provided in this Rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him." (Emphasis added.) 16 A.R.S. Rule 56(e), Rules of Civil Procedure.

The only chink in the plaintiffs' armor in this case appears to be the gap in their chain of title, and they attempt to obviate this defect by relying upon an affidavit of

---

1. The defendant contended below that the Arizona-Eastern Fluorspar Corporation had no power to execute this deed because its charter had been revoked in the State of Nevada in March of 1956. On appeal, the defendant has abandoned this contention, conceding that under § 78.585 Nevada Revised Statutes, Arizona-Eastern had the power to convey these claims in the closing of its business affairs.

one of the plaintiffs which contains the following verbiage:

"That Arizona-Eastern Fluorspar Corporation was incorporated August 20, 1952, and in December 1952 issued 77,650 of its shares to Fluorspar Producers Corporation in consideration of all the assets of Fluorspar Producers Corporation being assigned to Arizona-Eastern Fluorspar Corporation and the assumption by the latter of all the liabilities of the former; * * *."

■ The affidavit within which this language is contained was given by the plaintiff Marcil. Nowhere in the affidavit is there any showing as to how the affiant might be "competent to testify to the matters stated." Neither does it appear from the contents of the affidavit that its material parts are statements made on personal knowledge so as to satisfy the requirements of Knight v. DeMarcus, 102 Ariz. 105, 425 P.2d 837 (1967). We hold that the affidavit does not satisfy the requirements as to testimonial qualifications, above quoted.

■ Filed with the affidavits of the plaintiffs, but not incorporated by reference therein and not mentioned in the plaintiffs' motion for summary judgment, are facsimile copies of instruments that purport to be minutes of the board of directors of Arizona-Eastern Fluorspar Corporation, Fluorspar Producers Corporation and Lone Star Mines Corporation, which minutes authorize a merger of these corporations. There is also filed in similar unauthenticated form a facsimile copy of what purports to be an agreement among these same three corporations to effect a merger. These documents do not comply with the requirement of the subject rule that "sworn or certified copies of all papers * * * referred to in an affidavit shall be attached thereto * * *" and hence lend no support to the judgment rendered below.

Apparently anticipating that this court would hold, as we do, that there is a break in their chain of title, the plaintiffs argue that the judgment below was properly rendered in their favor because this is a "possessory action," and they, having been in possession of the subject claims prior to any possession of the defendant, have thus established a better right. The plaintiffs rely upon the decisions of Bagg v. New Jersey Loan Company, 88 Ariz. 182, 354 P.2d 40 (1960), and Woolsey v. Lassen, 91 Ariz. 229, 371 P.2d 587 (1962). They also contend that they are entitled to recover under the doctrine of adverse possession for the statutory period of ten years.

We do not find the *Bagg* and *Woolsey* decisions to be apposite. In both cases, there was evidence of actual possession of the disputed claims in the prevailing party at the time of the subsequent entry held to be illegal.

In *Bagg*, the subsequent entry of Bagg was made when he was in the course of his employment by Arizona Mining Corporation, a predecessor in interest of the plaintiff. He had been employed to do assessment work on and " * * * to exercise a custodial function * * *" (88 Ariz. at 185, 354 P.2d 40), over the claims, a portion of which he attempted to jump. It was not contested in the case that at the time of his entry to relocate, the plaintiff's predecessory in interest was " * * * in possession * * *" of the "Hillside" claim, one of those relocated by Bagg (88 Ariz. at 186, 354 P.2d 40). As to the other claim jumped, the "Virginia No. 1," the court predicated its decision only on "bad faith" (88 Ariz. at 192, 354 P.2d 40), a doctrine providing ample justification to rest the entire decision as to all the claims in dispute in *Bagg*.

In *Woolsey*, the actual prior possession of the prevailing party is noted in the following language:

"At that time [time of Woolsey's entry upon the claim in dispute] the defendant, Pima Mining Company, was in possession conducting an extensive pit copper mining and milling operation." 91 Ariz. at 232, 371 P.2d at 589.

Here, the only actual possession of the plaintiffs established by the record is such

possession as might result from doing "development work" in 1953 and the annual assessment work from 1958 through 1963 inclusive. There is no showing that the plaintiffs were doing any mining upon the subject property during this latter period of time nor is there any showing that they maintained a watchman on the property or in any other way had actual possession at the time of defendant's entry in November, 1963.

Inasmuch as the plaintiffs defend the judgment rendered below both on doctrines of prior possession and adverse possession, we consider the respective natures of (1) the "prior possession" without good title, which will be protected against intrusion, and (2) the possession necessary to establish a right to patent to a mining claim upon federal public domain under the doctrine of "adverse possession."

General statements of law as to the essentials of the possession required under these two doctrines have much in common. In *Bagg*, supra, our Supreme Court indicated that in a "possessory action" the possession to be protected was a "peaceable possession" (88 Ariz. at 188–189, 354 P.2d 40) and "prior and subsisting possession" (88 Ariz. at 191, 354 P.2d 40). A leading encyclopedia indicates that this type of protection is granted to "one who is in bona fide possession and working the claim." (58 C.J.S. Mines and Minerals § 139, p. 245.) In Harris v. Equator Mining and Smelting Co., 8 F. 863 (C.C., D.Colo.1881), a prior possession case, the court indicated that it was a " * * * locator in actual occupancy, who has been evicted by a wrongdoer * * *" who would be protected (8 F. at 865). In Lebanon Mining Co. v. Consolidated Rep. Min. Co., 6 Colo. 371 (1882), the court granted protection to a locator " * * * in actual possession and occupation" (6 Colo. at 379).

To elucidate these rather loose characterizations, we briefly discuss the factual situations in two cases, one of which denied protection to a prior possessor and one of which granted it, to "bracket in" on the boundary line between what is sufficient and what is insufficient "possession" under this doctrine.

In Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735 (1881), Belk had staked out a claim on December 19, 1876. On January 1, 1877, a prior valid claim to the same land became forfeited for failure to do assessment work. Belk did not relocate his claim after January 1, 1877. Between January 1, 1877, and February 21, 1877, on which date defendants, Meagher and associates, entered the claim to relocate it, the factual situation insofar as possession was concerned is noted in this language of the court:

> "This brings us to the facts of the present case. No one contends that the defendants effected their entry and secured their relocation by force. They knew what Belk had done and what he was doing. He had no right to the possession, and was only on the land at intervals. There was no inclosure, and he had made no improvements. He apparently exercised no other acts of ownership, after January 1, than every explorer of the mineral lands of the United States does when he goes on them and uses his pick to search for and examine lodes and veins. As his attempted relocation was invalid, his rights were no more than those of a simple explorer. In two months he had done, as he himself says, 'no hard work on the claim,' and he 'probably put two days' work on the ground.' This was the extent of his possession." 26 L.Ed. at 738.

On the basis of these facts, the court denied Belk protection as a prior possessor, holding that the defendants who entered peacefully and staked out a claim under federal law, had superior rights.

To indicate that constant occupancy is not required under this doctrine, however, we go to Davis v. Dennis, 43 Wash. 54, 85 P. 1079 (1906). Here, it was held that the working of a coal-mining property during all but the winter months for nearly ten years, during which time

$5,000 was expended in the care and development of a mine on the property, with a cabin being continuously maintained upon the property which contained mining tools and cooking utensils, was sufficient occupancy to protect against a peaceful entry taking place during the winter when the prior possessors were not actually upon the claim.

That we may gain insight into the requisites of occupancy under the doctrine of "prior possession" by looking to cases dealing with the extent of occupancy required for "adverse possession" is indicated by cases such as Law v. Fowler, 45 Idaho 1, 261 P. 667 (1927), in which the court speaks of "adverse possession" (261 P. at 669), but in which problems of prior possession were obviously involved, as the action was a possessory one and the plaintiff in the action had been in possession of the disputed mining claims prior to any entry by the defendant.

Lebanon Mining Co. v. Consolidated Rep. Min. Co., 6 Colo. 371 (1882), indicates that we are not discussing two completely separate concepts when it indicates that the prior possession which was protected in that possessory action is of the type that will "ripen" into a title if continued for the statutory period (6 Colo. at 381).

Statements in case law and treatises prescribing the essentials of that occupancy necessary to acquire title by adverse possession are not inconsistent with the enigmatic expressions as to what possession will be protected in a "prior possession" action. The following general statements in this respect are illustrative:

"Any interruption of the adverse possession within the period required by the statute of limitations of the state of the situs will prevent the acquisition of title by adverse possession. The acts of mining required for this purpose should *not be merely occasional, fugitive and desultory, but as continuous as the nature of the business and customs of the country permit and require.* * * *" (Em-

phasis added.) 2 American Law of Mining § 9.12, p. 314.

"* * * but such possession, in order to vest a title under the statute of limitations, must be open, notorious, exclusive and *continuous, and not loose, uncertain, scrambling and mixed.* Any interruption of the adverse possession within the required period prevents the acquisition of title by this method. *The acts of mining should not be merely occasional, fugitive and desultory, but as continuous as the nature of the business and customs of the country permit and require.*" (Emphasis added.) 3 Lindley on Mines § 688, pp. 1719–1720.

This being federal public domain, we are concerned with satisfying federal law:

"Where such person or association, they and their grantors, *have held and worked their claims* for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such *possession and working* of the claims for such period shall be sufficient to establish a right to a patent * * *" (Emphasis added.) 30 U.S.C.A. § 38, p. 333.

The requirement that a claim be "worked" has been commented upon by the Supreme Court of the United States in Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 330, 64 L.Ed. 567 (1920), as follows:

"* * * for to 'work' a mining claim is to do something toward making it productive, such as developing or extracting an ore body after it has been discovered. Certainly it was not intended that a right to a patent could be founded upon nothing more than holding and prospecting, for that would subject nonmineral land to acquisition as a mining claim."

▪ Applying this general law to the facts before us, we hold that the desultory nature of the possession of the plaintiffs as established in this record was insufficient to entitle the plaintiffs to recover possession, either under the doctrine of "prior

possession" or "adverse possession." The defendant, according to the record presented here, came peacefully upon admittedly mineral land, which was then unoccupied, for the purpose of staking out a claim according to applicable law and for the purpose of extracting valuable minerals. The pervading policy behind our federal mining law is to encourage exploration and development of the mineral resources of the nation. Bagg v. New Jersey Loan Co., 88 Ariz. 182, 190, 354 P.2d 40 (1960). Persons who come upon the public domain peaceably, in good faith, with the object of developing its mineral resources respond to an invitation extended by federal law, 30 U.S.C.A. § 22, and are not mere trespassers but such persons have a "color of right" or "color of title," Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735, 739 (1881), and see ·Sakow v. J. E. Riley Investment Co., 9 Alaska 427, 452 (D.C. 4th Div. 1939), affirmed 110 F.2d 345 (9th Cir. 1940), cert. denied 311 U.S. 659, 61 S.Ct. 15, 85 L.Ed. 423 (1940), or are "licensees" or "tenants at will" of the government, Union Oil Co. of California v. Smith, 249 U.S. 337, 346, ⎣39 S.Ct. 308, 310, 63 L.Ed. 635, 640 (1919), and see Ranchers Exploration and Development Co. v. Anaconda, 248 F.Supp. 708, 721 (D.C.1965), Duguid v. Best, 291 F.2d 235, 238 (9th Cir. 1961), and also see Zeiger v. Dowdy, 13 Ariz. 331, 334, 114 P. 565 (1911).

Merely doing assessment work upon a mining claim once a year, which we conceive could be done in one day or less annually, is certainly less possession than the prior possession of Belk, who expended two days' work on his claim in less than two months' time. (See quotation from Belk v. Meagher, supra.) We know of no case holding that the limited possession exercised by the plaintiffs in this action will alone prevent a peaceable entry by persons who enter for legitimate mining purposes.

Law v. Fowler, 45 Idaho 1, 261 P. 667 (1927), states:

"It is clear that the 'possession' of unpatented mining claims referred to in the reported cases is an actual possession—occupancy or working the claim—not constructive possession. *'Actual possession therefore means something more than mere compliance with the requirement to do the annual assessment work as a basis of title under claim of adverse possession.'*" (Emphasis added.) 261 P. at 670.

State v. Tracy, 76 Ariz. 7, 257 P.2d 860 (1953), contains similar language:

"The documentary evidence in the record —affidavits of performance of annual labor and a notice of intention to hold mining claim—is incomplete and does not present even prima facie proof of 'possession and working of the claims' for a full five-year period * * *." 76 Ariz. at 12, 257 P.2d at 863.

▇▇ That the plaintiffs may have had some "color of title" under their unrecorded deed[2] is of no avail because:

"While color of title may not be necessary to give title by adverse possession, it is required to extend an *actual possession* of a part of a tract of land constructively over the rest of it. *However,*

---

2. Generally, recording is not necessary to give one a "color of title" which may characterize and extend an actual possession. 2 C.J.S. Adverse Possession § 71 (c), p. 589; 3 Am.Jur.2d Adverse Possession § 109, p. 194. A.R.S. § 12–523 defines "color of title" as " * * * a consecutive chain of such transfer down to the person in possession without being regular, as if one or more of the memorials or muniments is not recorded or not duly recorded or is only in writing, or such like defect as does not extend to or include the want of intrinsic fairness and honesty, or when the party in possession holds the real property by a land warrant or land scrip, with a chain of transfer down to him in possession." We do not decide whether this statute, included as a part of our three-year adverse possession statute, has any pertinency to common law "color of title" which pertains to constructive possession. See 3 Am.Jur.2d Adverse Possession § 106, pp. 189–190; 2 C.J.S. Adverse Possession § 60(b), p. 580; and Diederich v. Ware, 288 S.W.2d 643, 646 (Ky.1956).

*color of title, without adverse possession thereunder, does not operate to give constructive possession."* (Emphasis added.) 3 Am.Jur.2d Adverse Possession § 106, p. 190.

And see 2 C.J.S. Adverse Possession § 60 (c), p. 581.

▪ In appealing from a judgment rendered below, the defendant has asked that we direct that judgment be entered for him. We see no justification for this. The plaintiffs' chain of title is obviously in dispute, and, if established, may very well dispose of this litigation in their favor. Belk v. Meagher, supra. Also, the record discloses that the annual assessment work on the claims in question for the year ending September 1, 1963, was performed by a son of the defendant for the plaintiffs as their employee. Affidavits on file indicate that this son was on the property with his father, the defendant, in August of 1964 and joined in excluding the plaintiffs from entry to do annual assessment work. A question of fact is thus apparently presented as to "bad faith" of the defendant, under the Bagg v. New Jersey Loan Company decision, and supporting citations therein. The decision of Ranchers Exploration and Development Co. v. Anaconda Co., 248 F. Supp. 708 (D.C.1965), has pertinency as to whether under the circumstances any lack of good faith on the son's part is imputable to the father "* * * either by reason of authorization or ratification * * *" (248 F.Supp. at 731.)

Judgment reversed for further proceedings not inconsistent herewith.

HATHAWAY, C. J., and KRUCKER, J., concur.