PERIGO et al. v. ERWIN.

(Circuit Court, D. Utah.    March 4, 1898.)

No. 165.

1. MINES AND MINING.
   The order in which the acts requisite to a location are done is immaterial, provided they are completed before the rights of other parties intervene.

2. SAME.
   Sufficient acts were done to constitute a valid location on a certain day. A few days later, another location was made by third parties, covering part of the claim, and this latter location was ultimately patented. In the meantime, one claiming under the original location made a discovery on the part not included in the second location, placed a discovery stake there, and staked off what remained of the claim, but there was no notice of the new location. *Held* that, as no rights of third parties had intervened as to this part of the claim, the location was valid.

3. SAME.
   If one who discovers a vein on land subject to location unwittingly places one or more of his stakes on land already claimed, this does not avoid his own location as to land not included in such adjoining claim.

This was a proceeding by William Perigo and Michael F. Clark against David D. Erwin in pursuance of an adverse claim to mining land.

George Westervelt, for complainants.
Brown & Henderson, for defendant.

MARSHALL, District Judge. This suit is brought under section 2326 of the Revised Statutes of the United States, in pursuance of an adverse claim filed in the land office by complainants, claiming to be the owners of the Star mining claim, against the defendant's application for a patent to the Kate F. mining claim. The Kate F. claim is entirely included in the Star, and, if the latter was ever validly located, it was prior in time to the location of the Kate F. But the original discovery of the Star was afterwards patented by the United States as a part of the Gopher mining claim, and the defendant contends that the issuance of such patent conclusively determines the invalidity of the Star location. The evidence shows that on Sep-

tember 5, 1888, the locator of the Star attempted to locate the same; and, in the absence of the patent for the Gopher, the evidence would justify a finding that the acts done by the locator on that day constituted a valid location of the Star. A vein was claimed to have been discovered; a stake and notice of location placed at the discovery point thereof. The claim was marked on the ground, and a copy of the notice recorded in the office of the mining recorder of the proper mining district. Nine days thereafter the Gopher mining claim was located, embracing within its limits about one-half of the Star location, including that part of the Star claimed as the place of the discovery of the vein. On June 20, 1889, the owners of the Gopher applied for a United States patent; and on May 11, 1892, a patent was issued to them for the claim so located, including the discovery of the Star claim. In July, 1889, Robert Gorlinski, a deputy mineral surveyor, surveyed the Star by direction of complainants, and placed stakes on the northeast and northwest corners thereof slightly differing in position from those of the locator. The southeast and southwest stakes were coincident with the patent stakes of a claim lying south of the Star, and did not require a change. All of the stakes were marked, and served to identify the claim so that its boundaries could be readily traced; but the northeast stake was on the Gopher claim, and the latter claim, as patented, included about one-half of the Star claim. In the latter part of the year 1890, complainant Perigo, the original locator of the Star, went on that portion of the claim outside of the limits of the Gopher, sunk a shaft four feet deep, and there discovered the same vein disclosed in the Gopher. He then removed the stake, marked as a discovery stake, and originally placed within the Gopher at the original discovery of the Star, to the new discovery, but posted no new notice of location, and made no new record. The original notice of location of the Star did not describe the claim with reference to any particular discovery point. Since the year 1888, the complainants have done the necessary annual work on the Star, and the evidence does not show an abandonment of the claim. The Kate F. was located on October 25, 1895, and was a valid location, if the ground was then open to location. The mining claims in question are situated in the Uintah mining district, but there is no evidence as to any local rules or regulations of the miners of such district.

The right to a lode claim is initiated by the discovery of a vein, by a competent locator, upon the land of the United States open to exploration and purchase, and by the marking of the claim on the ground, so that its boundaries can be readily traced. Work on the ground located is a condition of the maintenance of the right. Before the discovery of a vein on the unappropriated public land of the United States, there can be no location. But the order in which the acts requisite to a location are done is immaterial, provided they are completed before the rights of other parties intervene. Jupiter Min. Co. v. Bodie Consol. Min. Co., 11 Fed. 666; Mining Co. v. Mahler, 4 Morr. Min. R. 390. By the issuance of a patent to the owners of the Gopher for that claim, it was conclusively determined that complainants, by the attempted location of the Star, on September 5,

1888, acquired no right to the area in conflict with the Gopher. Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. 1110. But that conflict area included the place of discovery of the Star; so that it was in effect determined that prior to September 14, 1888, the locator of the Star did not discover a vein on the land of the United States open to exploration and purchase. But in July, 1889, the boundaries of the Star were re-marked on the ground by the surveyor, Gorlinski, as the agent of complainants; and in 1890, long prior to the location of the Kate F., the complainant Perigo discovered a vein on that part of the Star not in conflict with the Gopher, there sunk a shaft, and to that place removed his original discovery stake. The patenting of the Gopher did not determine anything more than the invalidity of the original location of the Star. The land now embraced in the Star, and not in conflict with the Gopher, still remained unappropriated public land of the United States, open to exploration and purchase by Perigo to the same extent as by others. This second discovery was after the restaking of the claim by Gorlinski, but no rights intervened the two acts, and the location must be deemed complete as of the date of the second discovery. Erhardt v. Boaro, 113 U. S. 527–536, 5 Sup. Ct. 560; Mining Co. v. Mahler, 4 Morr. Min. R. 390–399.

It is true there was no new notice of location, but the mining laws of the United States do not require any notice of location to be either posted on the claim or recorded, and there is no evidence of any local rules or regulations of the miners of the district affecting the question. Book v. Mining Co., 58 Fed. 106–115. The fact that the northeast stake of the Star was placed on the Gopher claim, and that a portion of the latter claim is included within the Star claim as marked on the ground, does not invalidate the location. Doe v. Tyler, 73 Cal. 21, 14 Pac. 375; West Granite Mountain Min. Co. v. Granite Mountain Min. Co., 7 Mont. 356, 17 Pac. 547. At the time of the second discovery, the evidence clearly shows that the locator only intended to claim that portion of the premises not in conflict with the Gopher.

There is nothing in the case of Belk v. Meagher, 104 U. S. 279, supporting the respondent's contention. In that case, Belk attempted to locate land already held by others under a valid subsisting location, and sought to maintain his right because, after his invalid location, the land became open to relocation, by reason of the failure of the original owners to do the required annual work thereon. But Belk made no relocation, and unsuccessfully urged a title initiating in a trespass to the land trespassed on. In this case no claim is made to the land included in the Gopher. No claim was so made when the location of the Star became an accomplished fact on its second discovery. Considering the location as then made, no act necessary to it can be construed into a trespass, unless it be the adoption of a staking of the claim which included a portion of the Gopher, and a placing on that claim of one of the stakes. To hold that such a trespass invalidates a location with respect to land not trespassed on would render titles to unpatented mining claims most insecure. While the mining laws of the United States require that a location

shall be so marked on the ground that its boundaries can be readily traced, they do not provide for a maintenance of such marking. If a location be once validly made, the stakes marking it may disappear, and nothing be left to identify the ground to any one other than the locator, without invalidating the claim. If thereafter another qualified locator bases a location on a discovery of a vein within the first claim, not then subject to relocation, he gains no right, because he has discovered no vein on the land of the United States open to exploration; but if, having discovered a vein on the land so open to exploration, he unwittingly places one or more of his stakes on the land already claimed, there seems no reason to avoid his claim to the unappropriated land by reason of the mistake. In accordance with the views here expressed, there will be a decree for the complainants.