[Civil No. 4193. Filed June 6, 1940.]

[103 Pac. (2d) 266.]

THOMAS J. RODGERS, Appellant, v. JEANNE SARETTE LEVY BERGER, Appellee.

Mr. L. C. McNabb and Mr. Elmer Graham, for Appellant.

Mr. Carl Krook, for Appellee.

McALISTER, J.—This is an appeal by Thomas J. Rodgers from a judgment quieting title of the plaintiff, Jeanne Sarette Levy Berger, to certain mining property. Two defendants other than appellant were named in the complaint but one of them, Buck Turner, disclaimed any interest in the property and the other, the state of Arizona, did not appeal from the judgment against it.

The complaint alleges that the plaintiff is the owner of three unpatented mining claims located in the Owens mining district of Mohave county, Arizona, known as Gold Standard No. 1, Gold Standard No. 2 and Gold Standard No. 3, and that the defendants make some claim adverse to hers respecting this property but that it is without any right whatever.

In the answer the defendant, Rodgers, alleges that he is the owner of the Yucca mining claim which he located in the Owens mining district in Mohave county on March 18, 1936, and that it is now a valid existing mining claim located on unpatented, unappropriated mineral land but upon ground forfeited by the plaintiff and her predecessors in interest. He avers further that neither the plaintiff nor her predecessors in interest made any valid location on the Gold Standard No. 1, Gold Standard No. 2 or Gold Standard No. 3, in that neither of them discovered mineral in place on any of the claims or properly marked the boundaries thereof on the ground, and that if she did make valid locations thereof the claims were long since forfeited by her or her predecessors in interest by failure to keep up the annual assessment work or were abandoned.

In the answer of the state of Arizona it was alleged that thirty-six is a school section and that since the passage of the act of Congress, approved January 25, 1927, 44 Stat. 1026, 43 U. S. C. A., §§ 870, 871, and the acceptance of its benefits by Arizona in chapter 83,

Session Laws of 1927, the state has been the owner thereof, even though it is mineral in character; that on June 1, 1938, it entered into an agreement with defendant, T. J. Rodgers, by which it authorized him to prospect for mineral ores on section 36 on the claims located by him thereon called Yucca No. 1, Yucca No. 2, Yucca No. 3 and Yucca No. 4, each covering twenty acres; that the boundaries of these Yucca claims conflicted substantially with the Gold Standard claims but that the latter were abandoned by plaintiff's predecessor in interest, Levy, long prior to January, 1927, or were forfeited for failure to perform the annual assessment work.

The court found as a fact that the three Gold Standard claims were duly located on September 1, 1915, by Gabriel Levy and John M. Owen, and that each year since then the annual assessment work on them had been performed by their owner and proof thereof filed or exemption therefrom claimed under the act of Congress; that the lands embraced within these claims are mineral lands and were worked as such long before they were located by Levy and Owen and were known to be such when located by them and when the survey of them was approved in November, 1917; that the greater portion of them is situated on Section 36, Township 13 North, Range 14 West, Gila and Salt River Base and Meridian, and that defendant Rodgers trespassed upon these claims in 1936 by attempting to relocate them and that in June, 1938, the state of Arizona, against the will of plaintiff and over her objections, attempted to lease to the defendant, Rodgers, for mining purposes that portion of this section embraced within the Gold Standard claims; that from September 1, 1915, until 1936, when defendant made claim thereto without any right whatever, plaintiff and her predecessors in interest occupied the land embraced within the Gold Standard locations and claimed

ownership thereof and worked them as mineral lands continuously and peaceably.

It appears from the testimony of defendant Rodgers that some time after he made the location of the Yucca claims he learned from a Mr. MacDonald, a state land employee, that they were on school section 36, and that he was advised by this gentleman to go to Phoenix and get a lease on them from the state land department; that he surrendered these claims and on June 1, 1938, secured from the state a prospector's permit or lease under which he was operating on February 2, 1939, when the complaint and summons in this action and an order to show cause why he should not be enjoined from removing any mineral bearing ore or rock from the Gold Standard claims alleged to be the property of plaintiff were served upon him. Before the return day, however, the parties stipulated that neither would perform any work on the claims until this litigation should be determined.

Section 36 was given the state by the Enabling Act for the benefit of public schools, but the survey of it was not approved until November 17, 1917, nearly two years after the location of the Gold Standard claims, and even though it was mineral land, the title vested in the state following the passage by Congress on January 25, 1927, of the act extending the grant to the state of sections 2, 16, 32 and 36 so as to embrace these numbered sections in every township, even though mineral in character, except where lands in lieu of such mineral lands had been selected, certified and approved, and none had been in the case of section 36. The Arizona legislature having accepted the benefits of this Congressional act in chapter 83, Session Laws of 1927, any mining locations made on this section after January 25, 1927, were invalid and without effect, and the only way defendant could obtain after that date any right to prospect and later work his Yucca claims

was by procuring a lease on them from the state through its land commissioner. But his right to secure and the state's to grant such a lease on any of the land within this section embraced within that covered by the Gold Standard claims, depended necessarily upon whether these were then valid and subsisting claims. If properly located in 1915 and the annual work on them was performed following that date down to 1938 or exemption therefrom claimed during those years in which it was allowed by Congress, the state, even though these claims were on a school section, could not lease the land covered by them or exercise any control whatever over it. The first and principal question, therefore, is whether the finding of the court that the Gold Standard claims had been properly located in 1915 and were kept alive from then until 1938 by performing the annual labor and by claiming exemption therefrom when allowed to do so is supported by the evidence.

■ A careful reading of the testimony shows a compliance with the statute as to annual labor during the entire period from 1915 to 1938, but it would serve no useful purpose to recite it here. The evidence as to the location of the claims in 1915 is not quite so clear, however, and the finding to this effect is attacked upon the ground that there is no evidence showing, first, that there was ever any discovery of mineral in place by the locators and, second, that monuments near the point of discovery or upon the boundary lines of the claims were erected by them. The evidence relative to the markings, both the discovery monument and those on the boundaries, is sufficient, and while that relating to the question of the discovery of mineral in place might be clearer, we think the record taken as a whole establishes this also. The court did not make a definite finding on this point except as it is implied in the general finding that the claims were

duly located in 1915. It found that the lands embraced in the Gold Standard claims Nos. 1, 2 and 3 were occupied and worked as mineral lands long before their location by Levy and Owen and that they are mineral lands and were known to be such when surveyed, when located by Levy and Owen, and when the survey of them was approved. The evidence amply supports this finding and it is hardly reasonable that Gabriel Levy and John M. Owen, the locators of these claims, both of whom had passed away some years before this action arose, and their successors in interest, would have kept up the annual work for so many years, twenty-three, unless they had complied, or felt they had, with the law as to discovery of mineral when they made the locations.

In addition, the defendant alleges in his answer that he located the Yucca claim on ground forfeited by the plaintiff and the court found that he had attempted to relocate the Gold Standard claims in March, 1936, when he located the Yucca. This is shown by the fact that the defendant wrote on the location notice of the Yucca these words: "this Claim was located as abandoned ground." This was not necessary, even though the Gold Standard claims had been abandoned or forfeited, to render his location valid and had not been since 1907 when the legislature amended the statute so that it was no longer required. Chapter 22, Session Laws of 1907. Yet the fact that he did so is an admission by him that the Gold Standard claims were properly located, and there is no reason why this admission, the same as any other, should not be treated as an admission against interests, even though it was not essential to the validity of his location. When considered in connection with the evidence that the land was mineral in character, that it had been worked long prior to 1915, that

the annual work had been kept up for so many years, twenty-three in all, that the original locators had been dead many years and there was no one living who had personal knowledge of the discovery, it is sufficient to establish the fact that mineral in place was discovered on them in 1915. This is especially true where it appears that the party in whose interest the claim of no discovery of mineral is made, the defendant here, had been familiar with the district for many years, had known the Gold Standard claims since 1914, and testified that it was old mining property and had been located even before that year. The fact that the Yucca was located on a school section after Congress had given the state sections 2, 16, 32 and 36 of each township, even though mineral in character, and was for this reason without any validity whatever, does not mean that his statement that he located it as abandoned property may not be given the same effect it would have been entitled to had he made it orally at the trial. He did not know when locating the Yucca that it was largely on school land, and though the statement that it was located as abandoned ground would have been unnecessary to its validity, even though it had not been on school land, his incorporation of this language in his notice justified the assumption that to his knowledge the land embraced within his claim had been located by someone else. The fact that he did not rely or insist on the validity of his location after learning it was on school land but instead secured from the state a prospector's permit or lease does not mean that his statement that it was located as abandoned ground was no longer true or entitled to such weight as the court felt it merited. In such a situation, the following statement in the syllabus of *Providence Gold Min. Co.* v. *Burke,* 6 Ariz. 323, 57 Pac. 641, would appear to be applicable:

"A location notice asserting that it is a relocation of another claim constitutes an implied admission of the validity of the first location."

The conclusion that the findings of the trial court, that the Gold Standard claims were valid and subsisting when the Yucca was located and later when the state granted defendant a prospector's permit or lease on the land covered by it, is supported by the evidence renders a consideration of the other assignments unnecessary.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.