John L. DODGE, Appellant,

v.

Frederick D. WILKINSON, Appellee.

No. 6518.

Supreme Court of Alaska.

May 13, 1983.

John L. Dodge, Fairbanks, pro se.

Christopher E. Zimmerman, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

PER CURIAM.

This appeal arises from a gold claim dispute. John L. Dodge sought land to mine in the Fairbanks area. In the fall of 1977, he located [1] several claims on federal public land at the headwaters of Miller Creek, above an area on the creek where Frederick D. Wilkinson was operating a substantial

---

1. "Locate" is a technical term in mining law. To locate a claim on federal public land, a prospector must first make a "discovery," which requires ascertaining the existence of ore in "valuable quantities." *See* 30 U.S.C. §§ 22, 28 (1971); AS 27.10.010; *Alyeska Pipeline Service Co. v. Anderson,* 629 P.2d 512, 517–21 (Alaska), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 674, 70 L.Ed.2d 641 (1981). The claimant must next post notice of the claim at the site. AS 27.10.010; AS 27.10.030(1); AS 27.10.040(1). Finally, the prospector must mark the boundaries of his claim on the ground. *See* 30 U.S.C. § 28 (1971); AS 27.10.010; AS 27.10.040(2).

placer mining venture. Dodge named his claims P, R, O, F, I, and T, the "PROFIT" group.

Dodge met Wilkinson at Wilkinson's mining operation that fall and told him that he had staked the claims. Wilkinson contended that he had located claims on October 3, 1976, in the same area. Wilkinson's new claims, part of the "Kelly Group," were identified by him as 18A, 19A and 20A. These claims abutted older claims of Wilkinson's on Miller Creek, which ended in an area identified as 17A.

Wilkinson controlled the only road along the creek. During the fall of 1977, he permitted Dodge to use this road to work his claims. When Dodge arrived to resume work the next spring, however, Wilkinson refused to permit him access to the road.

Wilkinson contended that Dodge was trespassing on his claims and he removed Dodge's equipment.

Dodge responded by sending a letter to Wilkinson in which he stated that he had not found any record of Wilkinson's claims in the recorder's office and that "[e]xtensive on-site searches conducted over the past three year period have failed to reveal any physical evidence whatsoever of the area as having been previously or presently under mining claim."

In September of 1978, Dodge made another discovery on the Miller Creek headwaters. He located four new claims, which he called the "Grizzly Group": Grizzly and Grizzly 1, 2 and 3. The PROFIT, Grizzly and Kelly claims lie roughly as indicated on the following map, prepared by this court:

PROFIT + GRIZZLY GROUPS
(shaded area indicates approximate area in dispute)

KELLY GROUP

The dam indicated on this map was constructed years ago by Wilkinson's predecessor, whose work mostly lay well downstream of the areas now in dispute. Wilkinson's work on his claims was largely confined to the claims downstream from the dam, although he had also performed some roadwork up to the dam.

On December 31, 1979, Wilkinson filed a complaint pursuant to AS 09.45.630 for the ejectment of Dodge from his claims 15A through 20A and for damages caused by Dodge's extraction of gold from the disputed area. At trial, Wilkinson traced his interest in the Miller Creek claims back to his grandfather, who had located the claims in

1903. In 1922, his grandfather had consolidated his discoveries and the claims he had purchased. The consolidated claims passed to Wilkinson in 1969. Not all of the claims disputed in this action were noted on the documents that accomplished the consolidation and the transfer of the claims. The 1922 consolidation of claims only included the claims up to 17A. Wilkinson relied upon his 1976 location for claims 18A, 19A and 20A. He admitted at trial that he had not brushed out or otherwise marked the boundaries of these claims; he had staked them simply by leaning four-by-fours that were about three feet tall against some trees.

The jury denied Wilkinson any relief on claims 18A, 19A and 20A, apparently on the basis that Wilkinson had never sufficiently located these claims because he had not placed permanent monuments on the ground to mark the boundaries of the claims. Dodge was accordingly held to have title to all of his Grizzly Group claims and some of his PROFIT Group claims.

The jury, however, awarded Wilkinson title to his claims identified as 15A, 16A and 17A. As to these claims, the jury apparently concluded that Wilkinson had validly taken title to the claims, which was not forfeited by his failure to maintain any boundary markings. These areas were therefore not open for relocation at the time Dodge made his claims.

 Dodge appeals from the superior court's judgment, contending that it was error to eject him from claims 15A, 16A and 17A. Dodge argues that the jury's verdict is contrary to the law. He does not argue that the initial location of these claims was invalid[2] or that the claims have been abandoned.[3] Instead, he argues that Wilkinson forfeited the claims by failing to maintain any boundary markings on the ground. Wilkinson concedes that there are no longer any visible boundary markings for these claims, but he contends that the law of mining is that when boundary markings are obliterated through no fault of the claimant, the claims are not forfeited by the lack of markings.

 Forfeitures of mining claims are disfavored by the courts. *See, e.g., Lowe v. U.S. Smelting, Refining, & Mining Co.,* 175 F.2d 486, 487–88 (9th Cir.), *vacated on other grounds,* 338 U.S. 954, 70 S.Ct. 493, 94 L.Ed. 588 (1949). A subsequent claimant must establish the forfeiture by clear and convincing evidence. *Id. See generally* 2 Rocky Mtn. Min.L.Inst., American Law of Mining § 8.7G (1982).

 The rule established early in the development of mining law has been that once a claim has been validly located and properly marked on the ground, the subsequent obliteration of the boundary markings through no fault of the locator, does not cause a forfeiture of the claim. *E.g., Loeser v. Gardiner,* 1 Alaska 641, 646 (D.Alas. 1902); *Perigo v. Erwin,* 85 F. 904, 906–07 (D.Utah 1898), *aff'd,* 93 F. 608 (8th Cir. 1899); *Book v. Justice Mining Co.,* 58 F. 106, 114 (D.Nev.1893); *McEvoy v. Hyman,* 25 F. 596, 598 (D.Colo.1885). The rationale for this rule is explained as follows: "[I]t is a well-known fact that boundary markings, etc., are prone to disappear within a comparatively short time after establishment[;] the law [therefore] does not require their

**2.** It is generally held that a prospector who pleads his case as a relocator, rather than as a locator, concedes the validity of the initial locations. *See, e.g., Rodgers v. Berger,* 55 Ariz. 433, 103 P.2d 266 (Ariz.1940). The only claims Dodge contended were void *ab initio* were Wilkinson's 1976 claims, as to which Dodge prevailed at trial.

**3.** Abandonment is the intentional relinquishment of a mining claim. Wilkinson has evidenced an intent to maintain all of his claims by filing affidavits of annual assessment work each year since 1969 for each of his claims, including 15A, 16A and 17A.

It appears that all of Wilkinson's claims were subject to relocation for a considerable period of time because no annual assessment work was performed on the claims. *See* 30 U.S.C. § 28 (1971); AS 27.10.150(b). Wilkinson's resumption of assessment work during the late 1960's, however, cured this default because it occurred prior to any relocation by another person. *See* 30 U.S.C. § 28 (1971). Dodge's mining activities began well after Wilkinson resumed his work on the claims.

maintenance or replacement by the locator in order to keep his location good." 54 Am.Jur.2d *Mines & Minerals* § 52 (1971).

Dodge has failed to present any compelling reasons for revising this long-standing rule, and independent research has failed to reveal any.[4] Furthermore, we believe we would be unable to revise the rule even if we thought it proper to do so. The area subject to dispute is located on federal public land, rather than state land. State law is applicable to the location of claims and claim disputes involving federal public land only to the extent that the state law is not inconsistent with federal law. *See* 30 U.S.C. § 22 (1971). There is no requirement in the federal law that boundary markers be maintained and the above-cited authorities indicate that the federal law is to the contrary. We believe, accordingly, that if we were to judicially adopt a rule requiring the maintenance of boundary markers under penalty of forfeiture of the claim, the rule would be invalid as being inconsistent with federal law.

Dodge has not raised any other possibly valid argument for reversing the judgment of the superior court and the judgment is accordingly AFFIRMED.

---

4. The purpose for requiring the maintenance of boundary markings would be to provide actual notice to subsequent locators that the area is already claimed. The federal statutes, however, indicate a definite preference for relying upon *constructive notice,* through the recordation of documents describing the location of the claim, rather than upon actual notice. *E.g.,* 30 U.S.C. § 28 (1971) (requiring the annual filing of a certificate of labor or improvements on the claims); 43 U.S.C. § 1744 (1982) (requiring the annual filing of a notice of intention to hold the mining claim with a sufficient description of the location of the claim). This preference is defensible in view of the obvious problems inherent in requiring maintenance of boundary markings (proneness to natural or deliberate removal or destruction).

The jury was instructed that recordation was necessary to preserve the validity of properly located claims. In finding that Wilkinson was the lawful holder of claims 15A, 16A and 17A, it implicitly concluded that Wilkinson had complied with recordation requirements. On appeal, Dodge does not raise or discuss the adequacy of record notice.