971 P.2d 1034 (1999)
AU INTERNATIONAL, INC., and Caldera Corporation, Appellants,
v.
STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellee.
No. S-8087.
Supreme Court of Alaska.
January 22, 1999.
*1035 Ann M. Bruner, Bogle & Gates P.L.L.C., Anchorage, for Appellants.
Lawrence Z. Ostrovsky, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before MATTHEWS, Chief Justice, and EASTAUGH, FABE, and BRYNER, Justices.

OPINION
EASTAUGH, Justice.

I. INTRODUCTION

Alaska Statute 38.05.265 provides that failure to properly record a statement of annual labor for state mining claims "constitutes abandonment of all rights acquired under the mining claim ... involved." Owners of 1,039 state mining claims filed a statement of annual labor for only four of those claims, and failed to identify the remaining 1,035 claims by name and claim number. Did their failure constitute an abandonment of the 1,035 claims even if the owners did not intend to abandon them? Because we conclude that intent is irrelevant under the statute, and because the owners here did not comply with the statute or the pertinent regulation, we hold that the claims were abandoned as a matter of law. We therefore affirm the judgment below.

*1036 II. FACTS AND PROCEEDINGS

In 1990 AU International, Inc., and Caldera Corporation acquired an interest in 1,039 state mining claims near Beluga Point. Caldera is an affiliate of AU International and has an interest in some of those claims. We refer to the owners collectively as Caldera. From 1990 to November 30, 1994, Caldera properly maintained its claims. It alleges it "expended over $750,000 to develop and improve" its claims.
On November 30, 1994, a Caldera representative went to the Alaska Department of Natural Resources (DNR) offices for the purpose of filing a statement of annual labor, as required by AS 38.05.210(b).[1] November 30 was the last day for doing so.[2] The representative had only enough money to pay the filing fees for four of the 1,039 claims. Caldera claims that a change in fees surprised its representative when he went to DNR late in the afternoon of November 30. The representative then recorded an affidavit listing four of the 1,039 claims. The affidavit did not list or describe the remaining 1,035 claims by claim name or claim number. Caldera asserts that its representative intended to amend the affidavit to add the other claims later.
In July 1995 Caldera attempted to record an amended affidavit of annual labor for the 1,035 claims and to pay any necessary fees. DNR informed Caldera that its failure to properly record an affidavit by November 30, 1994, had resulted in automatic abandonment of those claims. As DNR notes, "[u]nder most circumstances, the holder of a mining claim can relocate abandoned mining claims one year after abandonment." See AS 38.05.265. Caldera, however, cannot relocate its claims because they were located in an area that has been designated as a state game refuge and has been permanently closed to mineral entry.
Caldera argues that a certificate of substantial compliance is unnecessary; it maintains that it can amend its affidavit of annual labor under AS 38.05.210(c). Nevertheless, Caldera sought a certificate of substantial compliance, apparently on advice from DNR. DNR stated that it would consider Caldera's request if Caldera could document the $135,000 in expenses it reported for the 1994 labor year. After reviewing the financial records submitted by Caldera, DNR concluded that Caldera had only spent about $65,000 on its claims in the 1994 labor year. DNR noted that, even if excess labor from previous years were applied, annual recording would still be required. In October 1995 DNR denied Caldera's request for a certificate of substantial compliance.
Caldera requested reconsideration of DNR's October 1995 decision, requested permission to file an amended affidavit of annual labor, and requested a hearing. The Commissioner denied Caldera's request for reconsideration, stating that Caldera's claims were "abandoned by action of law, and that no compelling evidence of substantial compliance has been provided in support of a Certificate." The Commissioner also decided that Caldera could not record an amended affidavit and was not entitled to a hearing.
Caldera appealed the Commissioner's decision to the superior court, which affirmed.
Caldera appeals.

III. DISCUSSION

A. Abandonment

1. Standard of review

When an appeal is taken from a decision of the superior court sitting as an intermediate *1037 appellate court reviewing an administrative ruling, we independently review the merits of the administrative decision and give no deference to the superior court's decision.[3]
Because the question of whether Caldera is deemed to have abandoned its claims for failure to comply with AS 38.05.265 is a legal question involving no agency expertise, we apply the substitution of judgment standard of review.[4]
Although the question "[w]hether an abandonment has occurred is to be determined by the trier of fact from all the facts and circumstances of the particular case,"[5] there is no genuine fact dispute about what Caldera did on November 30. Any question whether a fact dispute about Caldera's intentions on November 30 is material to the issues on appeal is a question of law to which we apply the substitution of judgment standard.

2. Did Caldera abandon the other 1,035 claims?

Caldera argues that it did not abandon its claims because abandonment requires a subjective intent to abandon, coupled with an external and objective act by which that intent is carried into effect. Caldera contends that the evidence shows that Caldera did not intend to abandon its claims; rather, it planned to amend its affidavit to include the other 1,035 claims, and it sought a certificate of substantial compliance.
DNR responds that, although federal mining law requires an intent to abandon, Alaska law does not. It reasons that, because Alaska law is clear and contains no gaps, the court need not apply federal law to this case. DNR argues that AS 38.05.265 "explicitly provides for abandonment when a statement of annual labor is not properly recorded." It further reasons that, even if this court chooses to look to federal law for guidance, federal courts construe the federal recording requirements strictly, and failure to record results in an abandonment under federal law as well.
Owners of state mining claims must meet certain requirements for each labor year, which begins at noon on September 1.[6] Owners must perform annual labor worth at least $100 per year per claim, or make a cash payment of $100 to the state.[7] During the labor year, or within ninety days after it ends (and thus, by November 30), the owners also must record "a signed statement setting out the information, ... concerning the annual labor of the preceding year, any labor in excess of that required for the preceding year, and any payment of cash instead of annual labor."[8] Owners have two years in which to amend a sworn statement of annual labor.[9]
Alaska Statute 38.05.265 provides that failure to record a statement of annual labor constitutes abandonment of all rights acquired under the claims.[10] Per statute and regulation, a statement of annual labor that *1038 does not accurately set out the "essential facts" is void, has no effect, and may not be amended.[11] By regulation, the "essential facts" include "the name or number of the mining claim, leasehold location, or mining lease."[12]
DNR concluded that the 1,035 claims "are abandoned by action of law." DNR noted, "[w]hile there are other essential facts identified in the regulation, there is arguably no fact more fundamental to the Affidavit of Labor than the identification of the claims to which it applies." It concluded that, under 11 AAC 86.220(g), Caldera's affidavit of annual labor was void as to the 1,035 claims omitted from it, and Caldera could not amend the affidavit to include those claims. DNR explained that, if Caldera attempted to simply file a new affidavit, "the claims would be considered abandoned for failure to properly (timely) record the affidavit under AS 38.05.265." DNR concluded that Caldera's only possible remedy was a certificate of substantial compliance.
The superior court applied state law to this dispute. It reasoned that AS 38.05.265 expressly requires abandonment if the owner has not properly recorded an affidavit of annual labor by November 30, that "neither the courts nor the Commissioner may ignore the legislative intent expressed [in that statute]," and that Caldera had abandoned its claims as a matter of law.
We agree. By statute, the failure to record a statement of annual labor constitutes abandonment, without regard to intent.[13] Caldera's affidavit contained the "essential facts," the name and claim number, for only four of its 1,039 claims. The affidavit was therefore void and had no effect as to the other 1,035 claims.
Citing Kile v. Belisle, 759 P.2d 1292 (Alaska 1988), Caldera notes that we have stated that "[a]bandonment is the intentional relinquishment of a mining claim."[14]Kile, however, involved an ownership dispute over claims located by state claimants "more or less on top of" federal claims staked many years earlier.[15] The question before us was whether the federal claims had been abandoned, and we applied federal law to that question.[16]Kile did not involve allegations that claimants failed to satisfy a statute that deemed the failure to comply to be abandonment, and instead tacitly noted the difference between failing to perform the annual labor and failing to file the statement of annual labor.[17]
Similarly, Caldera cites Miscovich v. Tryck, 875 P.2d 1293 (Alaska 1994), and Dodge v. Wilkinson, 664 P.2d 157 (Alaska 1983), for the proposition that intent to abandon is required.[18]Dodge involved a dispute between John Dodge, who located claims on federal public land in 1977, and Frederick Wilkinson, who contended that he had located claims in the same area in 1976.[19] Dodge *1039 did not argue that Wilkinson had abandoned the claims; instead, he argued that Wilkinson had forfeited them by failing to maintain boundary markings on the ground.[20]Dodge, therefore, did not discuss the question of abandonment of state claims on state land. In Miscovich the original miner located and staked claims in the 1930s and 1940s under federal mining law.[21] In the 1980s another miner staked state mining claims on the same land.[22] We applied Kile, Dodge, and federal statutes to the dispute that resulted.[23] Because Kile, Dodge, and Miscovich do not discuss AS 38.05.265, or the possible abandonment of state claims on state land, they do not control Caldera's case.
Citing AS 38.05.185(c), Caldera urges us to apply federal law to this case. Alaska Statute 38.05.185(c) provides: "Unless otherwise provided, the usages and interpretations applicable to the mining laws of the United States as supplemented by state law apply to AS 38.05.185-38.05.275." But the parties acknowledge that Caldera's claims are state claims on state land. Alaska Statute 38.05.185(a) provides that specified statutes, including AS 38.05.265, govern the "acquisition and continuance" of rights in mineral deposits on state land.[24] Because the relevant state statute clearly addresses the subject of abandonment of state claims, we need not construe our statute in accordance with "usages and interpretations" applicable to the federal mining laws. Requiring an element of intent would be inconsistent with the clear language of AS 38.05.265.

B. Certificate of Substantial Compliance

1. Standard of review

The Commissioner has discretion to decide whether to issue a certificate of substantial compliance.[25] We therefore review the Commissioner's decision for abuse of discretion. "Where, as here, the question is as to the merits of agency action on matters committed to agency discretion, our scope of review is limited to whether the decision was arbitrary, unreasonable or an abuse of discretion."[26] If the decision on the certificate of substantial compliance rests on factual findings, we review those findings for substantial evidence.[27]

2. Did the Commissioner abuse his discretion?

Caldera argues that the Commissioner abused his discretion when he denied Caldera's request for a certificate of substantial compliance. Caldera contends that it "complied as nearly as possible with the statutes and regulations and in doing so ensured that the public was afforded the same protection that it would have had [if] Caldera [had] strictly complied with the recording requirements." It also maintains that no other claimants asserted rights that conflicted with Caldera's. Caldera argues that the Commissioner erroneously required it to prove the value and type of labor performed, and to show that circumstances beyond its control caused its failure to comply with the statute. Caldera, therefore, asserts that the Commissioner erred by imposing a higher standard *1040 for substantial compliance than the statute requires.
The State responds that the Commissioner's decision was well within the broad discretion that AS 38.05.185(b) accords him. The State argues that Caldera could and should have determined the recording fees before the afternoon of November 30, 1994. The State argues that the fees have not changed since 1991. The State contends that the Commissioner had the authority to request additional information regarding Caldera's claimed annual labor, and that Caldera did not attempt to correct its filing error promptly.
In affirming, the superior court reasoned that AS 38.05.185(b) "confers a great deal of discretion on the Commissioner" to determine whether the conditions have been met. The court noted that Caldera failed to comply with the provisions of Alaska mining law as nearly as possible because Caldera failed to learn the proper amount of fees and failed to attempt to correct its mistake until seven months later. The court concluded that the Commissioner's decision was neither arbitrary nor capricious, and that the Commissioner did not abuse his discretion.
We agree with the superior court's analysis. Caldera failed to provide essential facts for the 1,035 claims. Furthermore, Caldera did not show that circumstances beyond its control prevented it from filing properly. Accordingly, we conclude there was substantial evidence to support the Commissioner's conclusion that Caldera did not comply "as nearly as possible under the circumstances of the case."[28]

C. Due Process

1. Standard of review

Ordinarily, we apply our independent judgment to a due process claim because it raises a question of law that does not involve agency expertise.[29] The superior court applied that standard, and the parties argue that we should apply it as well.
The department, however, has the discretion to decide whether to hold a hearing or not.[30] Because this matter is addressed to the agency's discretion, our review "is limited to whether the decision was arbitrary, unreasonable or an abuse of discretion."[31]

2. Caldera's right to a hearing

DNR "will, in its discretion, hold a hearing when questions of fact must be resolved."[32] Caldera argues that the Commissioner denied Caldera's due process rights by refusing to allow a hearing before terminating its property rights in its claims.[33] It argues that factual issues existed regarding its intent and its possible substantial compliance, and that the Commissioner should have allowed it to present evidence on those issues.
The State argues that Caldera raised no issues of fact in its request for agency reconsideration; it contends that Caldera raised only issues of law and policy, and that the facts of the case were undisputed. The State further argues that Caldera had ample opportunity to "present evidence and argue its case" to DNR.
The superior court agreed with the State, finding no factual issues relevant to the issue of whether Caldera had abandoned its claims by failing to file the requisite affidavits. It also concluded that Caldera had received an adequate opportunity to present its case in *1041 writing, and that there was no due process violation.
Caldera identifies three specific alleged fact disputes which, it argues, required a hearing: (1) whether Caldera intended to abandon the claims, (2) whether Caldera had fulfilled the annual labor requirements for the claims, and (3) whether Caldera was deprived of access to its claims. None of these possible disputes, however, is material to the question of whether Caldera substantially complied with the recording statutes. The only issue relevant to that narrow question is whether Caldera timely filed a statement of annual labor substantially containing the essential facts for these claims.[34] There is no dispute that Caldera did not, nor is there any material dispute about the circumstances of its failure. Because there was no dispute over the facts relevant to the issue of substantial compliance with the recording statutes, we conclude that the Commissioner did not abuse his discretion in not granting Caldera a hearing.

D. Caldera's Access to the Claims

Finally, Caldera argues that the Commissioner had the discretion to excuse Caldera from making rental payments and performing annual labor for one year, because Caldera did not have access to its claims for the year.[35] Caldera argues that, from 1995 to 1997, it could not have performed any labor on the 1,035 claims at issue in this appeal because the Division had informed Caldera that the claims were abandoned. It also argues that the Commissioner could have excused "Caldera from paying rent and performing annual labor on the four claims that remained in good standing after 1994 because Caldera did not have access to the claims."
Because Caldera abandoned the 1,035 claims by failing to file the statement of annual labor, the issue of its access to those claims is moot. We decline to address Caldera's argument regarding access to the four claims that remained in good standing because Caldera has raised it for the first time in its reply brief.[36] Neither the statement of points on appeal nor Caldera's opening brief gives notice that access to those four claims was an issue on appeal. The State's brief did not address the issue of access to the four claims; it apparently thought, justifiably, that Caldera's opening brief referred only to its access to the 1,035 allegedly abandoned claims. The superior court entered no findings on whether Caldera was denied access to the four claims. We therefore consider the issue waived.

IV. CONCLUSION

We conclude that Caldera's failure to properly record constitutes abandonment of 1,035 of its 1,039 claims. We therefore AFFIRM the decision of the superior court affirming the administrative decision.
NOTES
[1] Although AS 38.05.210 requires a "statement" of annual labor, per regulation promulgated by DNR, the statement must be in affidavit form. See 11 Alaska Administrative Code (AAC) 86.220(c). We will refer interchangeably to the "statement" or "affidavit" of annual labor.
[2] AS 38.05.210(b) states in part:

During the year in which annual labor is required or within 90 days after the close of that year, the owner of the mining claim ... or some other person having knowledge of the facts shall record with the recorder of the district in which the claim ... is located a signed statement setting out the information, as may be required by the commissioner, concerning the annual labor of the preceding year, any labor in excess of that required for the preceding year, and any payment of cash instead of annual labor.
The labor year begins on September 1. 11 AAC 86.220(a).
[3] See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).
[4] See Douglas v. State, Dep't of Revenue, 880 P.2d 113, 114 (Alaska 1994).
[5] Kile v. Belisle, 759 P.2d 1292, 1295 (Alaska 1988) (citing United States v. Eaton Shale Co., 433 F.Supp. 1256, 1274 (D.Colo.1977)).
[6] 11 AAC 86.220(a).
[7] See AS 38.05.210(a).
[8] AS 38.05.210(b).
[9] AS 38.05.210(c) provides, in part:

The statement of annual labor ... may be amended within two years of the date by which the annual labor statement was required to be recorded. An amended statement shall be recorded for record in the same manner as the original statement. Additional labor claimed in an amended statement may not be applied against labor required to be done during a subsequent year.
[10] AS 38.05.265, as amended in 1997, provides in part:

Failure to properly record a certificate of location or a statement of annual labor, pay any required annual rental, pay any required production royalty, or keep location boundaries clearly marked ... constitutes abandonment of all rights acquired under the mining claim, leasehold location, or site involved, and the claim, location, or site is subject to relocation by others. A locator or claimant of an abandoned location or a successor in interest may not relocate the location until one year after abandonment.
[11] See AS 38.05.265 ("A statement of annual labor that does not accurately set out the essential facts is void and of no effect."); 11 AAC 86.220(c), .220(g) ("[A]n affidavit that does not set out the essential facts is void under AS 38.05.265 and may not be amended.").
[12] 11 AAC 86.220(c)(1) provides:

(c) During each year in which the performance of annual labor is required, or within 90 days after the close of that annual labor year, the owner of each mining claim, leasehold location, or mining lease on state land or some other person having knowledge of the facts, shall make and file for record an affidavit. The affidavit must describe the performance of the labor or the making of improvements for the immediately preceding assessment year and any cash payment made instead of performing labor. The affidavit must describe any labor in excess of that required for the preceding year that is to be applied to the subsequent year or years. The affidavit must contain the following essential facts:
(1) the name or number of the mining claim, leasehold location, or mining lease....
[13] See AS 38.05.265.
[14] Kile, 759 P.2d at 1295 (emphasis added).
[15] Id. at 1293-94.
[16] See id. at 1295-96.
[17] See id. at 1296 n. 13.
[18] See Miscovich v. Tryck, 875 P.2d 1293, 1296 (Alaska 1994); Dodge v. Wilkinson, 664 P.2d 157, 159 n. 3 (Alaska 1983).
[19] See Dodge, 664 P.2d at 157-58.
[20] See id. at 159.
[21] See Miscovich, 875 P.2d at 1296.
[22] See id. at 1297.
[23] See id. at 1298-1300 & nn. 2-3.
[24] AS 38.05.185(a) provides, in part: "The acquisition and continuance of rights in and to deposits on state land of minerals, which on January 3, 1959, were subject to location under the mining laws of the United States, shall be governed by AS 38.05.185-38.05.275."
[25] AS 38.05.185(b) and 11 AAC 86.125 are nearly identical provisions authorizing the Commissioner to grant a certificate of substantial compliance. AS 38.05.185(b) provides:

The failure on the part of a mining lessee or a locator to comply strictly with AS 38.05.185-38.05.275 and regulations adopted under those sections does not invalidate the rights of a mining lessee or a locator if it appears to the satisfaction of the commissioner that the mining lessee or the locator complied as nearly as possible under the circumstances of the case, and that no conflicting rights are asserted by any other person.
[26] North Slope Borough v. LeResche, 581 P.2d 1112, 1115 (Alaska 1978) (footnote omitted).
[27] See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).
[28] See AS 38.05.185(b).
[29] See State, Dep't of Revenue v. Merriouns, 894 P.2d 623, 625 (Alaska 1995); Keane v. Local Boundary Comm'n, 893 P.2d 1239, 1241 (Alaska 1995).
[30] See 11 AAC 02.050(a) ("The department will, in its discretion, hold a hearing when questions of fact must be resolved.").
[31] North Slope Borough, 581 P.2d at 1115 (footnote omitted).
[32] 11 AAC 02.050(a).
[33] Article I, section 7 of the Alaska Constitution provides, in part: "No person shall be deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.
[34] See AS 38.05.210(b), .265; 11 AAC 86.220(a), (c), (g).
[35] In denying Caldera's request for reconsideration, the Commissioner stated that "Caldera requested an extension of time to pay rental and file the assessment affidavit for the assessment and rental years ending November 30, 1995. I have no authority to grant such a[n] extension. Therefore, the request is denied."
[36] See Conam Alaska v. Bell Lavalin, Inc., 842 P.2d 148, 158 (Alaska 1992); see also Alaska R.App. P. 212(c)(3) (stating that a reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs"); Winn v. Mannhalter, 708 P.2d 444, 449 (Alaska 1985) (stating, "we may consider [an issue not listed in the statement of points on appeal] if it is raised at trial, adequately briefed on appeal, and the court and counsel are sufficiently apprised of the issue presented") (citations omitted).